327 A.2d 40
**COMMONWEALTH of Pennsylvania, Appellant,**
**v.**
**Larry WHITE, Appellee.**

Supreme Court of Pennsylvania.
Submitted Sept. 25, 1973.
Decided Oct. 16, 1974.

Robert W. Duggan, Dist. Atty., Robert L. Eberhardt, Asst. Dist. Atty., Pittsburgh, for appellant.

John J. Dean, Stephen P. Swem, Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

MANDERINO, Justice.

Appellee, Larry White, was convicted by a jury on May 12, 1972, of second degree murder for the shooting death of Joseph E. Erwin. Prior to the trial, appellee's motion to suppress various items of personal property seized as the result of a police search of his mother's residence was denied. Appellee renewed his objection to the admission of the fruits of this allegedly illegal search in his post-verdict motions. On February 28, 1973, the trial court reversed its prior decision and ordered that the items of personal property seized pursuant to an illegal search warrant be suppressed and that a new trial be granted. The prosecution now appeals from that order.

The prosecution does not contest the trial court's conclusion that the search warrant was defective. It raises, however, the following two issues. The first is whether the search and seizure pursuant to an invalid warrant was legally justified in that the appellee's mother voluntarily consented to the search. The second issue is whether the appellee, a temporary resident in his mother's home, had standing to question the validity of the search of that home and the seizure of his personal property.

The factual context in which appellee's mother consented to a search of her home is strikingly similar to that in *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). In *Bumper*, the defendant was convicted of rape based partially upon evidence obtained from a police search of the home where defendant and his 66-year-old grandmother lived. Two days after

the alleged rape, four police officers went to the home and were met at the front door by the grandmother. One of the officers stated "I have a search warrant to search your house." To this, the defendant's grandmother replied "Go ahead," and opened the door. A rifle was then discovered in the kitchen which was later introduced into evidence at trial. *Bumper* held that under those circumstances there was no voluntary consent to the search. *Bumper* said:

"When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid. The result can be no different when it turns out that the State does not even attempt to rely upon the validity of the warrant, or facts to show that there was, in fact, any warrant at all.

When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent."

*Id.* at 549–550, 88 S.Ct. at 1792, 20 L.Ed.2d at 802–803.

On the day after the crime in the present case, three police officers went to the rooming house in which the appellee's mother occupied a second-floor apartment. They were announced and admitted into the apartment by a neighbor. The officers identified themselves to appellee's mother who was sitting in bed, showed her a search warrant, and indicated that they were looking for her son's black leather coat. Appellee's mother did not get out of bed while the search took place, but directed

the officers to the coat. When she questioned their request for the production of appellee's glasses and wallet, one of the officers indicated that the warrant covered those articles as well as the coat.

Under the facts presented, we must conclude that the appellee's mother did not voluntarily consent to the search of her apartment, but rather acquiesced to a claim of lawful authority. Appellee's mother did nothing which would evidence an intent to aid the police in their quest for evidence until after she was presented with what appeared to be a valid search warrant by an individual apparently authorized to serve it. Her subsequent cooperation did not constitute a waiver of her constitutional right to be secure against unreasonable search and seizure, but rather was a submission to the law. Appellee's mother did not get out of bed during the search. When she thought that the police were exceeding the scope of the warrant, she objected. She submitted to the seizure of the glasses and wallet only after the police informed her that those items were also covered by the warrant. Since the search warrant was defective and there was no voluntary consent to the search, the trial court did not err in its conclusion that this was an illegal search and seizure. *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

The prosecution next contends that even if the search was not legally justified, the appellee has no standing to object to the admission of evidence obtained as a fruit of the illegal search because the illegal police conduct did not violate any rights of appellee.

The fourth amendment to the Constitution of the United States guarantees that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." To the same effect is Pa.Const. art. I, § 8, P.S. These rights are personal in nature. *Commonwealth v. Ross,* 452 Pa. 500, 307 A.2d 898 (1973).

"There is no necessity to exclude evidence against one [person] in order to protect the rights of another. No rights of the victim of an illegal search are at stake when the evidence is offered against some other party." *Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 967, 22 L.Ed.2d 176, 187 (1969). In order to obtain standing to challenge the legality of the search, appellee must establish that he, rather than his mother, was the victim of an invasion of privacy.

*Jones v. United States,* 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697, 702 (1960), held that "[i]n order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else."

In this appeal, the prosecution argues that the search was not directed against the appellee since the appellee was in the intensive care unit of the hospital at the time of the search. It contends that the search was directed at appellee's mother who was in sole possession and control of both the premises and the physical evidence at the time of the search. The prosecution, therefore, contends that only the mother's constitutional rights were violated. We cannot agree.

Appellee's physical absence from the home at the time of the search does not establish that the search was not directed at appellee or that it did not violate his right of privacy. An individual's *effects* and *possessions* are constitutionally protected from unreasonable search and seizure as well as his person. U.S.Const. Amend. IV, Pa.Const. art. I, § 8. This protection does not depend on the physical presence or physical absence of the individual owner. "So long as a person seeks to preserve his effects as private, even if they are accessible to . . .

others, they are constitutionally protected. Stated differently, a person must maintain the privacy of his possessions in such a fashion that his 'expectations of freedom from intrusion are recognized as reasonable.' " *Commonwealth v. Platou*, 455 Pa. 258, 266–267, 312 A.2d 29, 34 (1973), cert. denied, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974). *See also Mancusi v. DeForte*, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968). In this case, there is no evidence that appellee meaningfully abdicated his control, ownership, or possessory interest in the items seized. He did not sell them, give them away or abandon them. Instead, he left them in the apparent safety and security of his temporary residence, his mother's apartment. One must, therefore, conclude that appellee had a reasonable expectation that such items would be free from government intrusion whether or not he was physically present.

The prosecution's argument that the search was directed solely at the appellee's mother ignores the fact that the complaint and affidavit for search warrant and the warrant itself contained the information that appellee had been charged with the murder of Joseph E. Erwin, that appellee resided at his mother's address, and that it was believed that appellee's black leather coat which was identified at the scene of the crime was located at the above address. Appellee's mother was not mentioned in any of these documents nor has she ever been implicated in any manner in the commission of the crime. Under these circumstances it must be concluded that the search was directed at the appellee who had a reasonable expectation of privacy. The trial court did not err in holding that appellee had standing to challenge the search as an unconditional invasion of his right of privacy. We conclude that article I, section 8 of the Pennsylvania Constitution and the fourth amendment to the United States Constitution mandate that the order be affirmed.

The order of the trial court is affirmed.