577 A.2d 1375

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Frank J. FERRETTI, Appellant.**

Superior Court of Pennsylvania.

Argued March 6, 1990.

Filed July 10, 1990.

Lawrence F. Clark, Jr., Hersey, for appellant.

Before WIEAND, TAMILIA and POPOVICH, JJ.

POPOVICH, Judge:

This case involves an appeal from the judgment of sentence (aggregating 5–14 years imprisonment) for burglary, simple assault and recklessly endangering another person by the appellant, Frank J. Ferretti. We affirm.

The evidence, to be viewed in a light most favorable to the Commonwealth as the verdict-winner, reveals that in October of 1987, Joanne Jennings met the appellant at her sister's home. The next day, the two went on a date. This relationship lasted until Thanksgiving of 1987. At that time, Ms. Jennings informed the appellant she did not want to see him anymore. The appellant refused to accept this fact, and he continued to have contact with Ms. Jennings until December 31, 1987.

On December 30th, Ms. Jennings was phoned by the appellant after 8:00 p.m. He wanted to have a New Year's Eve party at her apartment. She told the appellant she wanted nothing more to do with him. With this, the appellant threatened Ms. Jennings over the phone that he had a gun and he wanted to come to her apartment. Ms. Jennings hung up on the appellant.

At approximately 1:30 a.m. on the 31st of December, 1987, there was a knock on Ms. Jennings' apartment door. She was in bed at the time and did not answer. Eventually, the appellant broke into the apartment by knocking the front door off its hinges and breaking the lock in the process.

The appellant called out to Ms. Jennings, and, when she saw he was carrying a sawed-off shotgun, she became frightened and did not respond. The appellant, going from room to room, made his way to the bedroom. When Ms. Jennings asked what the appellant was doing in her apartment, he "just started getting really rough" with her. He began hitting Ms. Jennings, and as she told it in court:

... he was hitting me on the head with his hand, and this was going on ... for a couple [of] hours[, *i.e.*,] hitting me and ripping my clothing off and pulling my hair out ... I had a lot of bald spots in my head because of that at the time....

The appellant refused to accept the termination of the relationship. To exhibit his displeasure with Ms. Jennings, the appellant placed the loaded shotgun at her neck and said: "it would be very easy ... to pull the trigger back, that [Ms. Jennings] could just be blown away." The appellant also threatened to kill Ms. Jennings. She was very scared, and she thought the appellant was going to shoot her.

The ordeal of physical and mental abuse lasted for several hours and culminated with the appellant forcing Ms. Jennings to have sex with him. Once the appellant had fallen asleep, the victim managed to escape to a friend's house, who, upon the victim's arrival, observed that the

victim's "face was bruised, her hair was a mess. She was crying hysterically", and her hair had been pulled out in spots. The victim told her friend that the appellant had assaulted her. The police were called to report the incident.

The police drove to the victim's apartment with a warrant for the appellant's arrest. He was not on the premises, but the police did find the appellant's belt on an end table and his underwear, with the initials "FF", were found on the floor next to the victim's bed.

On a tip from an anonymous informant, who at trial was stipulated by the prosecution and the defense to have been the victim's sister, the police went to Kathy Hummel's apartment to look for appellant. However, at first Hummel denied that the appellant was on her premises and demanded that the police secure a search warrant before entering the apartment. The police did obtain a search warrant and executed it during the evening of January 1, 1988. When the police entered Hummel's apartment, the appellant was found having a beer at the kitchen table. He was arrested and placed in handcuffs. A search of the apartment produced a sawed-off shotgun under the sofa in the living room. This was seized.

Prior to trial, a hearing was conducted in which the appellant sought to suppress the evidence seized on the grounds that the search warrant was defective.[1] The motion to suppress was denied, and, following a three-day trial, the appellant was found guilty as charged and sentenced. This appeal ensued.

The appellant raises nine issues for our consideration, six of which center upon the validity of the search warrant, and found by the court below not subject to attack by the appellant because he lacked standing to assail it.

■ We deal, first, with the question of "standing". The Fourth Amendment guarantees that: "The right of the people to be secure in their persons, houses, papers, and

1. No evidence relating to the appellant's standing was introduced at the hearing.

effects, against unreasonable searches and seizures, shall not be violated." The shotgun seized was stated to belong to neither the appellant nor Kathy Hummel. Hence, the appellant can have personal standing only if, as to him, the search violated the "right of the people to be secure in their ... houses...."

The United States Supreme Court has held that the Fourth Amendment does not shield only those who have title to the searched premises. See *Mancusi v. DeForte*, 392 U.S. 364, 367, 88 S.Ct. 2120, 2123, 20 L.Ed.2d 1154 (1968). In fact, beginning with *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), it was held that "anyone legitimately on [the] premises where a search occurs may challenge its legality ... when its fruits are prepared to be used against him." 362 U.S. at 267, 80 S.Ct. at 734. It is this language adopted as a criterion for establishing standing in *Commonwealth v. Treftz*, 465 Pa. 614, 351 A.2d 265 (1976), cert. denied, 426 U.S. 940, 96 S.Ct. 2658, 49 L.Ed.2d 392 (1976), which is seized by the appellant as the basis for claiming his entitlement to challenge the validity of the search warrant.

Given that in this jurisdiction we have turned to federal law to develop a framework upon which "standing" to contest a search and seizure has evolved, it is only logical to examine the present status of that same body of law to guide us now, for there is no case in Pennsylvania similar to the one before us. Having said that, we observe that in *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the United States Supreme Court had occasion to re-examine *Jones* in the context of a warrantless search of an automobile, and the seizure of a sawed-off shotgun and shells from its interior.

The petitioners in *Rakas* were passengers in the vehicle stopped and searched because it matched a get-away vehicle used in the robbery of a clothing store. Neither petitioner claimed ownership of the vehicle or the weapon and the shells seized. When the petitioners attempted to exclude such evidence from trial, the court denied the motion to

suppress because they lacked standing. This decision was affirmed by the intermediate appellate court and leave to appeal to the state supreme court was denied.

Before the United States Supreme Court, the petitioners argued, in the alternative, that they had standing to object to the search under *Jones* because they were "legitimately on [the] premises" at the time of the search. In analyzing this argument, the Court made it clear that the label we affix to our right to challenge (*i.e.*, "standing",) in a motion to suppress is not of paramount importance. Rather, the substantive question was one of whether the proponent of the motion to suppress had his/her own Fourth Amendment rights infringed by the search and seizure which is sought to be assailed.

Since " 'Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted' ", the Court stated: "it [wa]s proper to permit only defendants whose Fourth Amendment rights ha[d] been violated to benefit from the [exclusionary] rule's protections." 439 U.S. at 133, 134, 99 S.Ct. at 425, 426 (Citations omitted; Footnote omitted).

To effectuate the true intent of the Fourth Amendment—to protect the rights secured thereby—does not require that it be subsumed within the notion of "standing". On the contrary, it was the Court's belief that the definition of those rights be more properly placed within the purview of substantive Fourth Amendment law than within that of standing. As a result, the Court dispensed with the rubric of "standing" used in *Jones*, 439 U.S. at 141, 99 S.Ct. at 429, and, in doing so, rephrased the petitioners' claim, that their presence in the automobile was comparable to that of the defendant being in another's apartment in *Jones*, to one of whether their Fourth Amendment ("reasonable expectation of privacy") right had been violated by the search.

The reassessment of the concerns of one's rights, to be free from unwarranted government intrusion, by excising certain phraseology from the triggering mechanism permitting Fourth Amendment inquiry would do little to under-

mine the scope of interest protected by the Fourth Amendment, so stated the Court. In particular, as is applicable here, the Court wrote:

> ... the *Jones* statement that a person need only be "legitimately on premises" in order to challenge the validity of the search of a dwelling place cannot be taken in its full sweep beyond the facts of that case.
>
> *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), provides guidance in defining the scope of the interest protected by the Fourth Amendment. * * * the Court in *Katz* held that capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.
>
> \* \* \* \* \* \*
>
> ... the phrase "legitimately on premises" has not been shown to be an easily applicable measure of Fourth Amendment rights so much as it has proved to be simply a label placed by the courts on results which have not been subjected to careful analysis. *We would not wish to be understood as saying that legitimate presence on the premises is irrelevant to one's expectation of privacy, but it cannot be deemed controlling.*

439 U.S. at 143, 147–148, 99 S.Ct. at 430, 432–433 (Citations omitted; Footnotes omitted; Emphasis added).

In light of the meaningful exegesis of the Fourth Amendment doctrine by the *Rakas* Court, instead of being concerned with arcane distinctions developed in property and tort law between guests, licensees, invitees, and whether one is "legitimately on premises", to evaluate a claimed Fourth Amendment violation, our focus of attention should be upon whether the appellant had a legitimate expectation of privacy in the apartment (in particular, under the sofa) where the shotgun was found pursuant to a warrant for the appellant's person and the weapon seized. *Id.;* see also *United States v. Payner,* 447 U.S. 727, 731, 100 S.Ct. 2439,

2444, 65 L.Ed.2d 468 (1980); *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *Mancusi,* supra, 392 U.S. at 368–369, 88 S.Ct. at 2123–2124. By so holding, we have in no sense abandoned the four-pronged test adopted in *Commonwealth v. Treftz,* supra, to establish "standing".[2] Quite the contrary is true. We have, like the United States Supreme Court in *Rakas,* refocused our thinking in Fourth Amendment cases from one of preoccupation with nomenclature (*e.g.,* "legitimately on the premises" and/or "standing") to one of whether the defendant's rights were violated by the allegedly illegal search or seizure. See *United States v. Salvucci,* 448 U.S. 83, 87 n. 4, 100 S.Ct. 2547, 2551 n. 4, 65 L.Ed.2d 619 (1980). Even our own Supreme Court in *Treftz* concluded that the defendant's assault on the search and seizure in question would fail because there was *no reasonable expectation of privacy* in the field searched by police and from which a body was recovered. Standing was an issue.

 The means by which we traverse the contours of the Fourth Amendment, in search of a violation of its core rights, is not to be achieved by the use of phraseology, *e.g.,* "legitimately on the premises" or "standing". Rather, the course we pursue in applying the Fourth Amendment is guided by markers requiring our determination of "whether the person invoking its protection can claim a 'justifiable,' a

**2.** The Court in *Treftz* wrote:

The United States Supreme Court in *Brown* [*v. U.S.,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973)], *supra,* has outlined the perimeters of what shall be deemed essential to a finding that the criminal defendant's *own* personal rights lay at the core of the improper and proscribed governmental action, thereby justifying the invocation of the exclusionary rule. In the instant case, appellant Treftz fails to meet any of the *Brown* standards.

Under *Brown,* a defendant must allege one of the following "personal" interests in order to establish standing: (1) his presence on the premises at the time of the search and seizure; (2) a possessory interest in the evidence improperly seized; (3) that the offense charged include as an essential element of the prosecution's case, the element of possession at the time of the contested search and seizure; or (4) a proprietory or possessory interest in the searched premises.

465 Pa. at 617, 351 A.2d at 268 (Footnotes omitted).

'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." *Smith v. Maryland*, supra, 442 U.S. at 740, 99 S.Ct. at 2580 (Citations omitted). This determination is to be accomplished upon a totality of the circumstances. See also *Commonwealth v. Sell*, 504 Pa. 46, 55, 470 A.2d 457, 466 (1983), wherein the Supreme Court expressed concern that the reasonable expectation of privacy standard might not provide sufficient protection against wrongful police conduct. As a result, the *Sell* Court retained the "automatic standing" doctrine discarded by the United States Supreme Court, see note 5, infra, to allow one charged with a *possessory* offense to challenge the seizure of such evidence on Article I, Section 8 grounds of the Pennsylvania Constitution. See *Commonwealth v. Peterkin*, 511 Pa. 299, 513 A.2d 373 (1986); *Commonwealth v. Bennie*, 352 Pa.Super. 558, 560 n. 3, 508 A.2d 1211, 1213 n. 3 (1986); *Commonwealth v. Balch*, 328 Pa.Super. 71, 75, 476 A.2d 458, 462 (1984) and compare with *Commonwealth v. Bulling*, 331 Pa.Super. 84, 93 n. 11, 480 A.2d 254, 263 n. 11 (1984).

*Sell* in no sense, however, sounded the death knell for the "reasonable expectation of privacy" criterion, which is to be used in tandem with "whether that expectation is one that society is prepared to recognize as reasonable", in deciding whether one's privacy has been violated in *all other* instances. See, e.g., *Commonwealth v. Blystone*, 519 Pa. 450, 456, 549 A.2d 81, 87 (1988) (Conversation electronically recorded between the defendant and a police informant was assessed as to its suppressibility under Article I, Section 8's reasonable expectation of privacy criterion, as well as whether the expectation was one that society was prepared to recognize as reasonable). Accord *Commonwealth v. Evans*, 488 Pa. 38, 40, 410 A.2d 1213, 1215 (1979) (Overnight guest had a legitimate expectation of privacy so as to have standing to object to admission of physical evidence seized from host's apartment); *Commonwealth v. Kean*, 382 Pa. Super. 587, 591, 556 A.2d 374, 378 (1989); *Commonwealth v. Harvey*, 348 Pa.Super. 544, 547–549, 502 A.2d 679, 682–

684 (1985); *Commonwealth v. Pinkins,* 343 Pa.Super. 44, 52, 493 A.2d 1365, 1373 (1985); *Commonwealth v. Cihylik,* 337 Pa.Super. 221, 224, 486 A.2d 987, 990 (1985).

We have been presented with no persuasive argument to expand *Sell's* discontinuance of the "reasonable expectation of privacy" in a possessory offense context to one where "unreasonable" government intrusion is the focal point of inquiry once "standing" is established.[3] See *Minnesota v. Olson,* — U.S. —, —, 110 S.Ct. 1684, 1688, 109 L.Ed.2d 85 (1990) (Defendant's status as an overnight guest was alone sufficient to show that he had an expectation of privacy in the home of a friend that society was prepared to recognize as reasonable, and, thus, accorded him standing to challenge successfully evidence seized and introduced against him at trial so as to warrant the awarding of a new trial); *Evans, supra.*

At bar, we had testimony that the appellant arrived at Kathy Hummel's apartment between 5:00–5:30 p.m. on January 1, 1988, with two six packs of beer, but no shotgun

---

3. We cannot help but note that the Concurring Opinion's citation to *Commonwealth v. Sell,* 504 Pa. 46, 470 A.2d 457 (1983), makes reference to the right of privacy under the Pennsylvania Constitution (Article I, Section 8) protecting an "individual's effects and possessions" from unreasonable searches and seizures. With this we do not argue. However, *Sell* dealt with the "automatic standing" rule being retained in this Commonwealth despite its renunciation by the United States Supreme Court. Also, "automatic standing" was afforded to an accused and spoken of in terms of the defendant's "ownership or possession of the seized property" as the touchstone upon which standing to challenge a search and seizure under Article I, Section 8 was to be conferred where a possessory offense was charged.

Instantly, the defendant was neither charged with a crime of which possession was an element, nor did he claim ownership or possession of the seized evidence. Thus, even under *Sell,* the appellant does not have "standing", be it "automatic" or otherwise, to contest the evidence seized at Hummel's apartment. Accordingly, we will not permit the appellant to secure "standing" under a distorted reading of *Sell* by extending its perimeters to encompass facts not involving a *possessory* offense. We are not convinced to do so at this time in light of the continuing reference and use of the "reasonable expectation of privacy" as a viable prong in this Commonwealth to preserve one's right to challenge searches and seizures under Article I, Section 8 in a nonpossessory offense context.

was brought into the apartment by the appellant.[4] The two remained in the apartment until the police arrived at 11:00 p.m., and they were directed by Hummel to obtain a warrant as a condition precedent to entering her apartment to arrest the appellant and look for a weapon used in the assault of Ms. Jennings.

It was Ms. Hummel's testimony that the appellant, albeit he did not have a key to her premises, had been found, on occasion, in her apartment upon her arrival home. She did not object to this because, as she stated, "he's allowed to come in". They were friends, the appellant knew her daughter and Hummel and the appellant had a brother/sister relationship. Yet, Ms. Hummel did remark that when she left the apartment complex, as compared to just going to do her laundry one-half block away from the building where she lived, she would lock her door.

Based on the record before this Court, we can state that the appellant had no interest in connection with the searched premises that gave rise to " 'a reasonable expectation [on his part] of freedom from government intrusion' upon those premises." Compare *Combs v. United States*, 408 U.S. 224, 227, 92 S.Ct. 2284, 2286, 33 L.Ed.2d 308 (1972), quoting *Mancusi*, supra, 392 U.S. at 368, 88 S.Ct. at 2123; see also *State v. Taylor*, 298 N.C. 405, 259 S.E.2d 502 (1979). We have been presented with no case law by the appellant requiring us to hold otherwise. As such, we find that the court below was correct in concluding that it was unnecessary to decide whether the search of Ms. Hummel's apartment might have violated the rights secured to the appellant, be they via the Fourth and Fourteenth Amendments or our own state constitution (Article I, Section 8). In other words, there has been no showing that the government engaged in any illegal conduct offensive to the appel-

**4.** If the appellant had admitted to the ownership or possession of the weapon, he could have alleged a proprietary or possessory interest establishing the requisite standing to challenge the warrant, all of which (admission) could have been done without any danger of incriminating himself at trial. See *Brown v. United States*, 411 U.S. 223, 228, 93 S.Ct. 1565, 1568, 36 L.Ed.2d 208 (1973). He did not do so.

lant's right of privacy. In this context, it must be recalled that the appellant did not assert a proprietary or possessory interest in the apartment searched or the weapon seized.[5] Compare *Sell*, supra (ownership or possession of item seized is adequate to entitle owner or possessor thereof to invoke the constitutional protection of Article I, Section 8 by way of a motion to suppress its use as evidence). The appellant lived with his father, had none of his clothing at Ms. Hummel's apartment and did not have a key to gain entry when the owner was not at home or on the apartment complex grounds. Nor was there any evidence that the appellant had in the past or recently remained overnight on the premises belonging to Ms. Hummel. Thus, we are hard-pressed to assign a reasonable expectation of privacy in the apartment to the appellant, who appeared to be no more than a mere friend, guest or visitor of Ms. Hummel on the evening in question. As such, the appellant had no legitimate expectation of privacy there. See *Rakas*, supra; *State v. Hanna*, 542 A.2d 794, 802 (Del.Super.1988), and compare with *State v. Reddick*, 207 Conn. 323, 541 A.2d 1209, 1212 (1988). Accordingly, we will affirm the actions of the court below.[6]

Judgment of sentence affirmed.

WIEAND, J., files a concurring opinion.

WIEAND, Judge, concurring.

I concur in the decision of the majority to affirm the judgment of sentence. However, I am unable to agree that appellant lacked standing to contest the seizure by police of a sawed-off shotgun which was lying beneath a sofa in the

5. The appellant was not charged with a possessory offense to be accorded "automatic" standing. See *Commonwealth v. Sell*, 504 Pa. 46, 470 A.2d 457 (1983) and compare with *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) ("Automatic" standing rule established in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) was overruled).

6. The remaining issues, labelled in the appellant's brief at page 4 with the letters "G", "H" and "I", have been addressed properly by the court below in its opinion to us. We adopt it as our own and for allocatur purposes in dismissing the claims raised thereunder.

apartment of a friend in which appellant was present as a guest. I would affirm because my review of the record fails to disclose any basis for concluding that the gun was seized as a result of an unlawful search.

In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), on which the majority relies, the Supreme Court of the United States appears to have limited the requirements for standing where one is lawfully present in property of another. The Court there said:

In *Jones* [*v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960),] petitioner was present at the time of the search of an apartment which was owned by a friend. The friend had given Jones permission to use the apartment and a key to it, with which Jones had admitted himself on the day of the search. He had a suit and shirt at the apartment and had slept there "maybe at night," but his home was elsewhere. At the time of the search, Jones was the only occupant of the apartment because the lessee was away for a period of several days. 362 U.S., at 259, 4 L.Ed.2d 697, 80 S.Ct. 725 [730], 78 A.L.R.2d 233. Under these circumstances, this Court stated that while one wrongfully on the premises could not move to suppress evidence obtained as a result of searching them, "anyone legitimately on premises where a search occurs may challenge its legality." *Id.*, at 267, 4 L.Ed.2d 697, 80 S.Ct. 725 [734], 78 A.L.R.2d 233. Petitioners argue that their occupancy of the automobile in question was comparable to that of Jones in the apartment and that they therefore have standing to contest the legality of the search—or as we have rephrased the inquiry, that they, like Jones, had their Fourth Amendment rights violated by the search.

We do not question the conclusion in *Jones* that the defendant in that case suffered a violation of his personal Fourth Amendment rights if the search in question was unlawful. Nonetheless, we believe that the phrase "legitimately on premises" coined in *Jones* creates too broad a gauge for measurement of Fourth Amendment rights.

For example, applied literally, this statement would permit a casual visitor who has never seen, or been permitted to visit the basement of another's house to object to a search of the basement if the visitor happened to be in the kitchen of the house at the time of the search. Likewise, a casual visitor who walks into a house one minute before a search of the house commences and leaves one minute after the search ends would be able to contest the legality of the search. The first visitor would have absolutely no interest or legitimate expectation of privacy in the basement, the second would have none in the house, and it advances no purpose served by the Fourth Amendment to permit either of them to object to the lawfulness of the search.

We think that *Jones* on its facts merely stands for the unremarkable proposition that a person can have a legally sufficient interest in a place other than his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place. .See 362 U.S., at 263, 265, 4 L.Ed.2d 697, 80 S.Ct. 725 [732], 78 A.L.R.2d 233. In defining the scope of that interest, we adhere to the view expressed in *Jones* and echoed in later cases that arcane distinctions developed in property and tort law between guests, licensees, invitees, and the like, ought not to control. *Id.,* at 266, 4 L.Ed.2d 697, 80 S.Ct. 725 [733], 78 A.L.R.2d 233; see *Mancusi v. DeForte,* 392 U.S. 364, 20 L.Ed.2d 1154, 88 S.Ct. 2120 (1968); *Warden v. Hayden,* 387 U.S. 294, 18 L.Ed.2d 782, 87 S.Ct. 1642 (1967); *Silverman v. United States,* 365 U.S. 505, 5 L.Ed.2d 734, 81 S.Ct. 679, 97 A.L.R.2d 1277 (1961). But the *Jones* statement that a person need only be "legitimately on premises" in order to challenge the validity of the search of a dwelling place cannot be taken in its full sweep beyond the facts of that case.

. . . .

Viewed in this manner, the holding in *Jones* can best be explained by the fact that Jones had a legitimate expecta-

tion of privacy in the premises he was using and therefore could claim the protection of the Fourth Amendment with respect to a governmental invasion of those premises, even though his "interest" in those premises might not have been a recognized property interest at common law. See *Jones v. United States,* 362 U.S., at 261, 4 L.Ed.2d 697, 80 S.Ct. 725 [731], 78 A.L.R.2d 233.

*Id.* 439 U.S. at 141–143, 99 S.Ct. at 429–430, 58 L.Ed.2d at 399–402 (footnotes omitted). See generally: 4 W. LaFave, Search and Seizure, §§ 11.3(b) and (c) (1987).

Instantly, Kathy Hummel testified that she and appellant were close friends and that they had "like a brother/sister relationship for the five years we've known each other." Her testimony also disclosed that appellant had been a frequent visitor in her apartment and was allowed to enter the apartment even when she was not at home. On the night when the police searched the apartment, appellant had arrived at or about 5:30 p.m., and he and Hummel had been sitting at the kitchen table talking, drinking beer and listening to music. The police search of the apartment was not made until 11:00 p.m., approximately five and one-half (5½) hours after appellant's arrival. Under these circumstances, I would hold that appellant had a legitimate expectation of privacy in the apartment of Kathy Hummel so as to confer upon him standing to contest the police seizure of the sawed-off shotgun as a violation of the Fourth Amendment. See: *Commonwealth v. Evans,* 488 Pa. 38, 43, 410 A.2d 1213, 1215 (1980).

Appellant's lawful presence on the premises was also sufficient to confer upon him standing pursuant to Article I, section 8, of the Pennsylvania Constitution. The test for standing in this Commonwealth is that adopted by the Pennsylvania Supreme Court in *Commonwealth v. Treftz,* 465 Pa. 614, 351 A.2d 265 (1976), *cert. denied,* 426 U.S. 940, 96 S.Ct. 2658, 49 L.Ed.2d 392 (1976). This test requires that a defendant must allege one of the following "personal" interests in order to establish standing: *(1) his presence on the premises at the time of the search and seizure;*

(2) a possessory interest in the evidence improperly seized; (3) that the offense charged include as an essential element of the prosecution's case, the element of possession at the time of the contested search and seizure; or, (4) a proprietory or possessory interest in the searched premises.

*Id.*, 465 Pa. at 621–622, 351 A.2d at 268 (footnotes omitted) (emphasis added). See also: *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Commonwealth v. Peterkin*, 511 Pa. 299, 309–310, 513 A.2d 373, 378 (1986), *cert. denied*, 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987).

In *Commonwealth v. Sell*, 504 Pa. 46, 470 A.2d 457 (1983), the Supreme Court held, as a matter of state constitutional law, that a person having a possessory interest has automatic standing to contest a search and seizure of evidence. In reaching this decision, the *Sell* Court refused to adopt the rationale of the United States Supreme Court in *Rakas v. Illinois, supra,* and instead, elected to afford citizens greater protection under the Pennsylvania Constitution, explaining as follows:

We decline to undermine the clear language of Article I, section 8 by making the Fourth Amendment's amorphous "legitimate expectation of privacy" standard a part of our state guarantee against unreasonable searches and seizures. We do so not only because we find the United States Supreme Court's analytical distinction between "standing" and "threshold substantive question," *see Rakas, supra* 439 U.S. at 139 n. 7, 99 S.Ct. at 428 n. 7, unhelpful to our interpretation of Article I, section 8's protection, but also because we believe the United States Supreme Court's current use of the "legitimate expectation of privacy" concept needlessly detracts from the critical element of unreasonable governmental intrusion.

Article I, section 8 of the Pennsylvania Constitution, as consistently interpreted by this Court, mandates greater recognition of the need for protection from illegal governmental conduct offensive to the right of privacy.

An individual's **effects** and **possessions** are constitutionally protected from unreasonable search and seizure as well as his person. U.S. Const.Amend. IV, Pa. Const. art. I, § 8. This protection does not depend on the physical presence or physical absence of the individual owner. 'So long as a person seeks to preserve his effects as private, even if they are accessible to ... others, they are constitutionally protected. Stated differently, a person must maintain the privacy of his **possessions** in such a fashion that his "expectations of freedom from intrusion are recognized as reasonable." ' *Commonwealth v. Platou,* 455 Pa. 258, 266–267, 312 A.2d 29, 34 (1973), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974). (Emphasis in original). *Commonwealth v. White,* 459 Pa. 84, 89–90, 327 A.2d 40, 42 (1974).

Moreover, we have held that personal possessions remain constitutionally protected under Article I, section 8 until their owner meaningfully abdicates his control, ownership or possessory interest therein. *Commonwealth v. White, supra; see Commonwealth v. Platou, supra.* We remain convinced that ownership or possession of the seized property is adequate to entitle the owner or possessor thereof to invoke the constitutional protection of Article I, section 8 by way of a motion to suppress its use as evidence. *See also, State v. Alston* [88 N.J. 211, 440 A.2d 1311 (1981)], *supra.*

Since we regard ownership or possession of the seized property as sufficient to confer standing to challenge a search and seizure under Article I, section 8, it necessarily follows that a person charged with a possessory offense must be accorded "automatic standing" adopted by this Court in *Commonwealth v. Knowles* [459 Pa. 70, 327 A.2d 19 (1974)], *supra.*

*Commonwealth v. Sell, supra* 504 Pa. at 66–68, 470 A.2d at 468–469.

In following the rationale of *Rakas,* the majority in this case suggests that it is not abandoning the test for standing

announced in *Commonwealth v. Treftz, supra,* but merely refocusing the analysis from a "preoccupation with nomenclature (e.g., 'legitimately on the premises' and/or 'standing')" to a determination of whether the defendant had a legitimate expectation of privacy in the area searched. Such an argument, however, was expressly rejected by the *Sell* Court in its determination of state constitutional law. Although the issue in *Sell* was different, it seems clear to me that the Supreme Court has conferred standing under the Pennsylvania Constitution to challenge the admission of fruits of an allegedly illegal search upon any person who was legitimately present on the premises at the time of the search. I conclude, therefore, that appellant had standing in this case to contest the seizure of the shotgun from Kathy Hummel's apartment.

Notwithstanding my disagreement with the majority on the issue of standing, I concur in the decision to affirm the judgment of sentence. After carefully reviewing the record and testimony at the suppression hearing, I am satisfied that the warrant authorizing the search of Hummel's apartment was validly issued, under seal, upon probable cause, sufficiently named the shotgun as an item to be seized, and was properly executed by police. Because there was no basis for suppressing the shotgun which was seized, therefore, I agree that the judgment of sentence must be affirmed.