COMMONWEALTH of Pennsylvania,
Appellant

v.

Carlus GRUNDY, Appellee.

Commonwealth of Pennsylvania,
Appellant

v.

Darnel Pigford, Appellee.

Commonwealth of Pennsylvania,
Appellant.

v.

Jamil Salter, Appellee.

Commonwealth of Pennsylvania,
Appellant.

v.

Ryan Vialva, Appellee.

Superior Court of Pennsylvania.

Argued May 18, 2004.

Filed Sept. 10, 2004.

Michael Erlich, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Timothy J. Golden, Philadelphia, for appellees.

Before: MUSMANNO, KLEIN, JJ. and McEWEN, P.J.E.

OPINION BY KLEIN, J.:

¶ 1 The Commonwealth appeals from the trial court's order suppressing the evidence of cars found in a "chop shop." We reverse.

¶ 2 For several weeks, the police were aware of a pattern of theft and later stripping of cars in the Frankford area of Philadelphia. A number of cars, stripped of hoods, doors, etc., had been found in a two-block radius of the 4800 block of Mulberry Street. Two days after the latest stripped car was found, the police received a complaint that a white Nissan Maxima was stolen. This car had a LoJack anti-theft device that emitted a signal which could be traced and gets louder as one gets closer to it. Using several cars with the ability to track LoJack signals, the police received a strong LoJack reading in front of a gate at 4817 Mulberry Street, indicating close proximity to the stolen car. It was about 10:00 pm. on January 24, 2002.

¶ 3 There were no houses behind the gate, only rows of adjacent garages. The gate was closed, but unlocked. (N.T. 2/19/03, p. 23). There was a sign that an officer testified said, "keep gate locked," (N.T. 2/19/03 p. 96), and the officers knew the garages were on private property (N.T. 2/19/03, p. 53). Although photographs of the fence were taken later and the officers did not know whether or not the signs were in place at the time they entered, the signs said, "No parking at any time to the far right, keep gate locked, please report anyone leaving gate open … one garage now available." (N.T. 2/19/03, P. 103).

¶ 4 The officers pushed the gate open and saw light coming from only one garage. As they got closer, the officers heard music playing and the sound of a power saw. Approaching the door to the garage, the officers noticed a hole the size of a half dollar where a lock had been removed. They looked through the hole in the door and identified the stolen car by license plate number. The officers entered the garage and arrested the person who turned out to be the lessee of that

particular garage, Carlos Grundy, and three other men, Jamil Salter, Ryan Vialva, and Darnell Pigford. The officers then obtained a search warrant and completed the search. The defendants filed a motion to suppress, which the trial court granted.

¶ 5 The Commonwealth raises two issues on appeal: (1) whether the three men other than Grundy had a reasonable expectation of privacy in the garage, and (2) whether exigent circumstances justified the police entry into first the lot and then the garage. We hold that the three men other than Grundy did not have an expectation of privacy, and there were exigent circumstances akin to "hot pursuit" justifying the entry into the garage area and then the specific garage, because unless the police acted immediately, an automobile would have been destroyed.

### 1. Only Grundy had a valid expectation of privacy in the garage.

¶ 6 In determining whether an area is protected from unreasonable searches, we analyze whether the person asserting the right has a legitimate expectation of privacy in the area. *Commonwealth v. Ferretti*, 395 Pa.Super. 629, 577 A.2d 1375, 1379 (1990). This determination is to be accomplished by examining the totality of the circumstances. *Id.*

¶ 7 In general, the expectation of privacy occurs in one's home. It is clear that the three men other than Grundy had neither ownership nor tenancy rights in the garage. Unlike the situation of an overnight stay at a friend's home, the "other men" here were participating in an illegal activity inside a chop shop garage. Thus, as in *Commonwealth v. Peterson*, 535 Pa. 492, 636 A.2d 615 (1993), even if Grundy had a valid privacy interest, the three other men had no privacy interest since they neither owned nor rented the garage and were only occupying it on a temporary basis for illegal business. *See, e.g., Minnesota v. Carter*, 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (no meaningful privacy interest where Carter entered apartment with permission of the woman who leased it and spent several hours there helping her chop and pack cocaine into plastic baggies); *Unites States v. Silva*, 247 F.3d 1051, 1056 (9th Cir.2001) (no protected privacy interest in a shed used for manufacturing methamphetamine where, despite having key to the shed, appellants were not lessees of the property). *See also Commonwealth v. Perea*, 791 A.2d 427 (Pa.Super.2002) (defendant failed to demonstrate privacy interest in vehicle from which controlled substances were seized without warrant, where, even though defendant possessed vehicle keys, he had no paperwork to show ownership or any other legitimate connection to property).

### 2. Exigent circumstances.

¶ 8 As our Supreme Court stated in *Peterson, supra:*

Our analysis begins with the principle that warrantless arrests may be effected for felonies committed in the presence of the police, *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Commonwealth v. Jackson*, 450 Pa. 113, 299 A.2d 213 (1973), unless the perpetrator of the felony is in his own home. *Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978). In such instances, exigent circumstances must exist to justify the warrantless intrusion because of the substantial expectation of privacy in vested residential premises.

636 A.2d at 618.

¶ 9 Here the police were appropriately using LoJack to apprehend, at minimum, a felon in possession of a recently stolen

car.[1] Since the LoJack device indicated to the police that the car was first moving and then stopped, the police concededly had probable cause for a search warrant. But they also had probable cause to arrest the person in possession of the Nissan in question. *See Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304, 310 (1963) (police may conduct warrantless arrest where there is probable cause to believe that a suspect has committed a felony). While a warrant is necessary for police entry into a home to make an arrest absent exigent circumstances, *see, e.g., Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), that is not the case here, since the area only contained garages and no one's home. Because no one was in his or anyone else's home, and the police had probable cause to make a warrantless arrest for a felony, the officers' actions were reasonable. Following the report of the stolen car, the modern technology of a LoJack device gave the police probable cause to believe they were honing in on a car thief. They were in hot pursuit of a stolen car, just as they would have been were they in view of the car. Once inside the fence, when the police saw the light and heard music and particularly power saw sounds emanating from only one garage, they reasonably believed that the car was about to be stripped. The police acted reasonably in moving to find the person who stole the car and arrest him or her. That the police have the authority to make a warrantless arrest where they have probable cause to believe a felony has been committed alone justified the entry into the garage. They further have probable cause to make an entry when they believe a car is about to be destroyed.

¶ 10 Moreover, there were exigent circumstances to justify the police action. Initially, we note that the entry into the gated area where there were 80 garages is not an entry into even Grundy's property, but into the common space of a garage complex. Regardless of whether the owner of the garage complex had a privacy interest in the general garage space inside the fence, neither Grundy nor the others had a privacy interest in the common area. *See Commonwealth v. Carelli*, 377 Pa.Super. 117, 546 A.2d 1185, 1192 (1988) (collecting cases) ("Generally, a subjective expectation of privacy as to that which is located in an area of common access will be deemed to be unreasonable"). It is irrelevant whether or not the owner gave permission. Any one of a number of people who rented the garages had access to the common area, and therefore the defendants did not expect to have privacy everywhere inside the fence. Moreover, the LoJack signal gave the police reasonable ground to enter the fenced area to make an arrest just as they could have had they seen the stolen car enter the complex and observed its occupants close the gate behind them.

¶ 11 Once inside the gate, there were "exigent circumstances" that justified the entry into the garage where the car was about to be chopped up. First the light and then the sound of loud music and the electric saw drew the police to the garage in question. This is not merely the case of a stolen car taken for resale in some other location or even just a joy ride. The police had information that there was a chop shop in the area and had found numerous stripped cars in the immediate vicinity, including one only two days earlier. If the police had taken the time to first seek a

---

1. Any theft offense concerning a vehicle, including receiving stolen property, is graded as a felony of the third degree. *Commonwealth v. Holzlein*, 706 A.2d 848, 852 (Pa.Super.1997), *citing* 18 Pa.C.S. § 3903(a.1).

warrant, the Nissan would have been in parts and junk by the time they got back. All agree that the trial judge was correct when she said, "a car can be disassembled in a matter of minutes." (Trial Court Opinion at 11).

¶ 12 As the Commonwealth pointed out in its brief:

> While it is true that a *more extreme* exigency would have been presented had defendants been carving up people, rather than cars, the seriousness of the criminal activity at issue—an enterprise involved in the theft and destruction of numerous automobiles over a four month period—cannot be discounted.

Brief for Appellant at 26–27. Automobiles are generally one of, if not the, most valuable items owned by the average citizen. There is no requirement that the police stand idly by while they have probable cause to believe that someone's valuable asset is about to be destroyed. Stated simply, exigent circumstances exist where, absent police action, a valuable automobile will be destroyed.

¶ 13 While defendants frequently cite the seven-part test of "exigency" enunciated in *Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978), the considerations therein are guidelines, not mandates that defeat the generally understood definition of exigent circumstances.[2] Viewing the totality of the circumstances, and balancing the diminished privacy interest in a non-residential garage against the height-ened need for law enforcement in this case, immediate police action was reasonable. *See generally Maryland v. Wilson*, 519 U.S. 408, 411, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) ("touchstone" of constitutional analysis is "always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security," calling for a balance between the public interest and the individual's right to personal security free from arbitrary interference) (citations and quotations omitted). *See also Commonwealth v. Reed*, 851 A.2d 958, 2004 WL 1211505 (Pa.Super. June 3, 2004) (defendant did not have reasonable expectation of privacy in common hallway and stairs of apartment building where he resided, even though outside door of building was locked and required assistance of resident to open); *Commonwealth v. Thomas*, 698 A.2d 85 (Pa.Super.1997) (no reasonable expectation of privacy in communal fire escape from which officer viewed marijuana growing outside suspect's apartment).

¶ 14 Order reversed and case remanded for trial. Jurisdiction relinquished.

¶ 15 McEWEN, P.J.E., files a Concurring and Dissenting Opinion.

MCEWEN, P.J.E., Concurring and Dissenting.

¶ 1 While the author of the Majority Opinion has undertaken a careful analysis and provided a perceptive expression of view, and while I hasten to join in the

---

2. In any event, we note that those considerations point to exigency in this case given (1) the seriousness of the crimes; (2) the reasonable likelihood that the suspects were armed (if only with power tools); (3) the clear showing of probable cause; (4) the police had very good reason to believe the suspects were inside the premises; (5) the entry by police was peaceable; and (6) the entry occurred at night, at which time a greater delay in obtaining a warrant could be expected. While the remaining factor, the likelihood of escape in the absence of immediate apprehension, does not militate heavily in favor of exigency, there is no need for all of the above factors to coalesce in a single case. Rather, exigent circumstances may exist where some factors are absent. *Commonwealth v. Williams*, 411 Pa.Super. 586, 602 A.2d 350, 355 (1992). Thus, on balance, the above factors indicate exigency in this case.

conclusion of the Majority that the police did not violate the rights of appellees as guaranteed by Article I, Section 8 of the Pennsylvania Constitution, and therefore join in the decision to reverse the order of suppression, I am nonetheless compelled to disagree with the ruling that only appellee Grundy was entitled to claim the protections of that Constitutional provision.

¶ 2 The trial judge in her Opinion to this Court phrased the relevant issue as "whether the police had the right to enter on fenced [and] gated private property without a warrant and without even the most minimal attempt to contact the owner or owners for permission." Slip Opinion, p. 4. This Court recently, in *Commonwealth v. Reed*, 851 A.2d 958 (Pa.Super.2004), when confronted with a claim that the hallway and stairway of an apartment house were protected by the Pennsylvania Constitution, concluded that "[i]f even one unrelated person had an unfettered right to access an area, the area is not protected in Pennsylvania from government searches and seizures." *Id.* at 962. In the present case, the presence of the police on the common driveway of this collection of garages, entry of which was through unlocked gates, was even less invasive than the conduct approved by this Court in *Reed.* Therefore, there is no support for appellees' argument, which was accepted by the trial judge,[3] that the police in this case were not in a legal position to view their activity in the garage.

¶ 3 Thus, since the police presence outside the subject garage was not prohibited, it follows that when they witnessed defendants in the possession of the recently stolen vehicle, and they had legitimate reason to believe that that evidence was soon to be damaged or destroyed, there existed sufficient exigent circumstances[4] to justify their actions. *See: Commonwealth v. Carelli,* 377 Pa.Super. 117, 546 A.2d 1185, 1192, 1197 (1988), *appeal denied,* 521 Pa. 609, 557 A.2d 341 (1989) (observation of evidence located in a protected area from a lawful vantage point outside the protected area is generally deemed not to be a search); *Commonwealth v. Govens,* 429 Pa.Super. 464, 632 A.2d 1316 (1993) (*en banc*), *appeal denied,* 539 Pa. 675, 652 A.2d 1321 (1994) (defendant had standing, but search without warrant did not violate constitutional rights). Consequently, on this record there is no basis upon which to find that the police violated the constitutional rights of the appellees.

¶ 4 Although the conclusion that the police did not act improperly renders moot the question of whether each of the appellees was entitled to assert the Constitutional protection afforded by Article I, Section 8 of the Pennsylvania Constitution, I am obliged to express the basis for my disagreement with the Majority on this issue. The Supreme Court of Pennsylvania, in the landmark case of *Commonwealth v. Sell,* 504 Pa. 46, 470 A.2d 457 (1983), held that in this Commonwealth "a defendant accused of a possessory crime who seeks to challenge a search and seizure under Article I, section 8 has 'automatic standing' ... to maintain that challenge ...," *id.* 504 Pa. at 66, 470 A.2d at 468, and declared:

> We decline to undermine the clear language, of Article I, section 8 by making the Fourth Amendment's amorphous "legitimate expectation of privacy" standard a part of our state guarantee

---

**3.** It merits mention that the trial judge did not have the benefit of this Court's decision in *Commonwealth v. Reed,* 851 A.2d 958 (Pa.Super.2004).

**4.** *See: Commonwealth v. Lopez,* 525 Pa. 185, 190–191, 579 A.2d 854, 856 (1990), *cited with approval in Commonwealth v. Peterson,* 535 Pa. 492, 499, 636 A.2d 615, 618 (1993).

against unreasonable searches and seizures. We do so not only because we find the United States Supreme Court's analytical distinction between "standing" and "threshold substantive question," *see Rakas [v. Illinois,]* 439 U.S. 128, 139 n. 7, 99 S.Ct. 421, 428 n. 7, 58 L.Ed.2d 387, unhelpful to our interpretation of Article I, section 8's protection, but also because we believe the United States Supreme Court's current use of the "legitimate expectation of privacy" concept needlessly detracts from the critical element of unreasonable governmental intrusion.

*Sell, supra,* at 66–67, 470 A.2d at 468. Eventually, the Pennsylvania Supreme Court did include the concept of "legitimate expectation of privacy" in the analysis of Article I, Section 8 claims, but made it clear that this concept was operable only when the focus of the reviewing court was on the place searched by the police. *See: Commonwealth v. Peterson,* 535 Pa. 492, 636 A.2d 615 (1993). *See also: Commonwealth v. Carlton,* 549 Pa. 174, 180, 701 A.2d 143, 145–146 (1997) ("[I]n order for a defendant accused of a possessory crime to prevail in a challenge to the search and seizure which provided the evidence used against him, [a defendant] must, as a threshold matter, establish that he has a legally cognizable expectation of privacy in the premises which were searched.").

¶ 5 The Supreme Court, in its 1993 decision in *Commonwealth v. Peterson, supra,* addressed the issue of whether the defendant was entitled to expect constitutional protection while present in an "abandoned storefront," *id.* at 495, 636 A.2d at 617, and unanimously ruled that the defendant had no legitimate expectation of privacy in a place where "he had no rights as against

the owner, and none which would permit him to exclude other persons attempting to enter." *Id.* at 500, 636 A.2d at 619 (citation omitted). The Pennsylvania Supreme Court has continued to apply the same approach in *Commonwealth v. Gordon,* 546 Pa. 65, 683 A.2d 253 (1996) (no privacy interest in abandoned building where defendant had no right to exclude other), and in *Commonwealth v. Hawkins,* 553 Pa. 76, 718 A.2d 265 (1998) (defendant had abandoned any interest in the property seized by transferring it to another person prior to the police seizing it from that other person). More recently, this Court, in *Commonwealth v. Perea,* 791 A.2d 427 (Pa.Super.2002), *appeal denied,* 568 Pa. 736, 798 A.2d 1288 (2002), applied the *Peterson* rationale in concluding that the defendant had no expectation of privacy in an "abandoned vehicle", which was parked on the street with no valid registration, no license plate, two flat tires, and an expired inspection sticker. *Id.* at 428–429. The unifying fact in each of these cases was abandonment: either the site searched was open to anyone by virtue of its owner having abandoned it, or the person asserting the right to challenge the police seizure had abandoned the property. *Compare: Commonwealth v. Carlton, supra* at 180, 701 A.2d at 146 (expectation of privacy *was* found to exist where defendant Donald Carlton was found to have "used" the residence searched, even after his counsel argued on the issue of constructive possession that he did not live there). The factual history of the present case, however, reveals that all of the defendants were invitees to a leased structure, the lessee of which had the ability to legally exclude others by closing and/or locking the door.[5] It is upon this basis

5. Although the garage here appears to have been devoted to a commercial use, it bespeaks the obvious that in most instances a garage is part of residential use by attendant home-owners. It strikes me that if one accepts the rationale of the Majority, a guest present in

that I would hold that all of the defendants were entitled to the protections of Article I, Section 8 of the Pennsylvania Constitution to the extent that those protections afforded them relief.[6]  *See e.g.: Commonwealth v. Govens, supra.*

¶ 6 Therefore, I concur in the decision of the Majority to reverse the Order of the trial court.

the garage attached to the residential home of a lessee would have no reasonable expectation of privacy and would be subject to the unrestricted prerogative of the police to conduct a search of those things not physically attached to his person.  Some would say that such a result would eviscerate the concept of automatic standing in this Commonwealth.  *See: Commonwealth v. Sell,* 504 Pa. 46, 470 A.2d 457 (1983).

6.  I differ with the reliance of the Majority upon the Federal Court Opinions in *Minnesota v. Carter,* 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998), and *United States v. Silva,* 247 F.3d 1051 (9th Cir.2001), since those cases were "standing" cases under the Fourth Amendment to the United States Constitution which, unlike the Pennsylvania Constitution, has been interpreted to contain no right of automatic standing.  Nor, in my view is the majority's citation to *Commonwealth v. Ferretti,* 395 Pa.Super. 629, 577 A.2d 1375 (1990), *appeal denied,* 527 Pa. 597, 589 A.2d 688 (1991), apt, since the Court there was addressing a challenge brought by a defendant *who was not charged with a possessory crime,* and the Court specifically held that it was not a case controlled by *Commonwealth v. Sell,* 504 Pa. 46, 470 A.2d 457 (1983).  *See: Commonwealth v. Ferretti, supra* at 1380, n. 3.