COMMONWEALTH of Pennsylvania,
Appellant

v.

Keith Arron MILLER, Appellee.

Superior Court of Pennsylvania.

Submitted Nov. 28, 2011.
Filed Nov. 20, 2012.
Reargument Denied Jan. 10, 2013.

James E. Zamkotowicz, Assistant District Attorney, for Commonwealth, appellant.

Anthony J. Tambourino, Public Defender, York, for appellee.

BEFORE: BOWES, COLVILLE *, and FITZGERALD **, JJ.

OPINION BY FITZGERALD, J.:

Appellant, the Commonwealth of Pennsylvania, appeals[1] from the order entered in the York County Court of Common Pleas, granting the motion to suppress of Appellee, Keith Arron Miller. We hold that Appellee has not established a reasonable expectation of privacy in the property searched.

In its opinion, the trial court summarized the evidence:

On October 24, 2010, at approximately 11:30 p.m. the Pennsylvania State Police (PSP) were patrolling the area of Muddy Creek in Delta, Pennsylvania, following a report of a stolen vehicle. PSP received a call from police in Anne Arundel County, Maryland, that they were investigating a stolen van that was equipped with a "LoJack type" GPS system. Anne Arundel provided GPS coordinates indicating the van was located in the Muddy Creek Road area. Corporal [Alan] Trees and several other troopers patrolled and checked driveways attempting to locate the van. Corporal Trees located a clearing which contained several large trailers and he asked Trooper [Justin] Dembowski to enter and search the clearing for the van.

Corporal Trees described the clearing as follows:

"If you are facing the clearing from Muddy Creek Road, there is a small drive that goes into the clearing. I believe it was either dirt or gravel. In the clearing, there was a trailer that was like a semi tractor trailer type structure, then there was a small box that would have been like the back side of a U-Haul, just the box, not the truck. The large trailer was parallel to Muddy Creek Road, and the box was further back and actually facing the roadway."

There were residences in the area; however, not in the clearing. If standing in the clearing, the nearest residence was 150 yards through the woods. The corner of the first trailer, the larger one which sat parallel to the roadway, was approximately three car lengths from the roadway. Corporal Trees testified that it did not appear that anyone was living in the trailers, and he did not observe any "No Trespassing["] signs or fences around the area.

After Trooper Dembowski searched the clearing, he requested that Corporal Trees meet him in the area. They stood by the trailer in the clearing and Trooper Dembowski explained that he had found several items in the clearing that appeared to be from stolen vehicles, such as pipe fittings and tools. Corporal Trees viewed the tools at the corner of the large trailer that sat parallel to the road. In order to check behind the trailer for the stolen van, he had to walk by the items on the ground. As the troopers were standing by the trailer talking, Corporal Trees was notified via radio that the owner of the stolen vehicle reported that tools were also stolen and had the name "Cotton" printed on the cases. Corporal Trees looked down and directly in front of him were the

---

* Retired Senior Judge assigned to the Superior Court.

** Former Justice specially assigned to the Superior Court.

1. The Commonwealth certified that the trial court's order will terminate or substantially handicap the prosecution of this criminal offense, pursuant to Pa.R.A.P. 311(d).

cases with "Cotton" written across the front of them. The troopers did not find the stolen van in the clearing. At that time, Corporal Trees and Trooper Dembowski requested a PSP investigator apply for a search warrant and in the meantime they would monitor the closest intersection to check vehicles coming and going from the scene.

Trooper [Bradley] Dunham prepared a search warrant for the property at 768 Muddy Creek Road, owned by Wayne Miller, Sr., where the trailers and tools were located. The warrant was signed on October 25, 2010, at 5:00 a.m. Troopers executed the search warrant and seized the tools, a stolen vehicle (not the van), and a stolen excavator.

Trial Ct. Op., 6/29/11, at 1–3 (citations omitted).

On October 26, 2010, a criminal complaint was filed against Appellee charging him with owning, operating, or conducting a chop shop,[2] and eight counts of receiving stolen property.[3] On March 21, 2011, Appellee filed a motion to suppress. On April 18, 2011, the court held an evidentiary hearing on Appellee's motion. The trial court summarized the testimony of Wayne Miller, Sr., father of Appellee, as follows:

[Mr. Miller] returned to his property at 768 Muddy Creek Road while PSP was executing the search warrant on October 25th. Mr. Miller stated that there was a "tattered" yellow sign posted on a tree that said "No Trespassing" at the time of the search. He also indicated that between the trailers and his house there is a path through the woods, worn down by riding his four-wheeler.

Trial Ct. Op. at 3–4 (citations omitted). On April 21, 2011, the court granted the motion to suppress. On May 17, 2011, the Commonwealth filed this timely appeal. The Commonwealth filed a timely court-ordered Pa.R.A.P. 1925(b) statement and the trial court filed a responsive opinion.

The Commonwealth raises the following issues on appeal:

The trial court erred in suppressing evidence where there was no evidence that [Appellee] had a reasonable expectation of privacy in the unfenced rural wooded area where the evidence was located. The trial court erred in suppressing evidence on the basis that the open fields doctrine did not apply to a pile of stolen goods left in the open ground in a rural wooded clearing (vacant lot) occupied only by [two] storage trailers well away from the curtilage of any residence.

Commonwealth's Brief at 4.

The Commonwealth argues that because Appellee set forth no evidence that he had a proprietary or possessory interest in the wooded clearing, "[Appellee] failed to show that he had a reasonable expectation of privacy in the wooded area sufficient to even show standing to object to the search." *Id.* at 11–12. Furthermore, the Commonwealth contends that no violation of Appellee's "constitutional rights occurred when the police entered into an unfenced wooded rural clearing three car lengths from a public road, and over 150 yards from the nearest residence." *Id.* at 12. We agree the Commonwealth is entitled to relief.

▮▮▮ In an appeal from a grant of a motion to suppress, our standard of review is as follows:

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains

---

2. 18 P.S. § 1.3(1).

3. 18 Pa.C.S. § 3925(a).

uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Chernosky*, 874 A.2d 123, 124–25 (Pa.Super.2005) (quoting *Commonwealth v. Gaul*, 867 A.2d 557, 559 (Pa.Super.2005), *rev'd on other grounds*, 590 Pa. 175, 912 A.2d 252 (Pa.2006)).

This Court has held that in order to prevail on a suppression motion, the defendant must establish standing to litigate suppression and a reasonable expectation of privacy in the area searched. *Commonwealth v. Bostick*, 958 A.2d 543, 551–52 (Pa.Super.2008) (citation omitted).

> [A] defendant is required to separately demonstrate a personal privacy interest in the area searched or effects seized, and that such interest was actual, societally sanctioned as reasonable, and justifiable.
>
> \* \* \*
>
> Rather, a defendant must establish a possessory interest, a legitimate presence, or some factor from which a reasonable and justifiable expectation of privacy could be deduced to prove that this subjective expectation of privacy is legitimate.
>
> \* \* \*
>
> Residence may give rise to an expectation of privacy, but an individual may also have a sufficient interest in a place other than his home so that the Fourth Amendment protects him.
>
> \* \* \*

We further stated that,

> [f]actors to be considered in determining whether a defendant has a legitimate expectation of privacy in another person's home include: (1) possession of a key to the premises; (2) having unlimited access to the premises; (3) storing or clothing or other possession on the premises; (4) involvement in illegal activities conducted on the premises; (5) ability to exclude other persons from the premises; and (6) expression of a subjective expectation of privacy in the premises.

*Id.* at 551–53 (quotation marks and citations omitted).

In *Commonwealth v. Ferretti*, 395 Pa.Super. 629, 577 A.2d 1375 (1990), police entered the defendant's friend's apartment pursuant to a search warrant, arrested the defendant after he had been accused of physically and mentally abusing an ex-girlfriend, and seized a shotgun that was found under the sofa. *Id.* at 1377. Prior to trial, the defendant filed a motion to suppress the shotgun on the grounds that the search warrant was defective. The trial court, however, denied this motion and the defendant was later found guilty. *Id.*

On appeal, this Court reviewed federal law and stated, "to evaluate a claimed Fourth Amendment violation, our focus of attention should be upon whether the [defendant] had a legitimate expectation of privacy" in the area searched. *Id.* at 1379. This Court found that although the defendant had been in this friend's apartment occasionally, he did not live there, did not have keys, and did not have any of his clothing in the apartment. *Id.* at 1381. Thus, the *Ferretti* Court held the defendant "had no interest in connection with the searched premises that gave rise to a reasonable expectation [on his part] of freedom from government intrusion upon those premises." *Id.* (quotation marks and citations omitted). The defendant, in short, "had no legitimate expectation of privacy [in his friend's apartment]." *Id.*

In the instant case, Appellee refers to the property as his own. Appellee's Brief at 14. However, the record indicates the property was Appellee's father and not Appellee's. N.T. Suppression H'rg, 4/18/11, at 17. Appellee sets forth no alternative argument that he had any other type of possessory interest in the property. *See Bostick*, 958 A.2d at 551–53. Indeed, Appellee failed to refer this Court to any fact indicating any other interest in the property that would establish a legitimate expectation of privacy in the property. *See id.*

Like the defendant in *Ferretti*, Appellee did not live at the property searched. *See* N.T. at 17. Further, Appellee did not identify any indicia tending to establish a legitimate expectation of privacy. *See Ferretti*, 577 A.2d at 1381. Accordingly, we hold that Appellee "had no interest in connection with the searched premises that gave rise to a reasonable expectation" of privacy. *See id.* (quotation marks and citations omitted). Because Appellee has not demonstrated a privacy interest, he cannot prevail on his claim that he is entitled to constitutional protection in the area searched. *See Bostick*, 958 A.2d at 551–53.

Order reversed. Case remanded. Jurisdiction relinquished.