J-S51037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| RYAN HORNING, | |
| Appellee | No. 2646 EDA 2015 |

Appeal from the Order July 31, 2015
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0006140-2014

BEFORE:  GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED AUGUST 15, 2016**

The Commonwealth appeals from the trial court's order granting the motion to suppress evidence filed by Appellee, Ryan Horning.[1]  We affirm.

We take the following relevant facts and procedural history from the trial court's October 28, 2015 opinion, and our independent review of the certified record.  On March 1, 2014, the victim, Christopher Miller, was robbed after he left the SugarHouse Casino.  The next day, police brought Appellee in for questioning because the casino's videotape surveillance footage suggested his involvement in the robbery.  Detective Dominic O'Neill

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The Commonwealth has certified that the court's order terminates or substantially handicaps its prosecution of this case.  *See* Pa.R.A.P. 311(d).

interviewed Appellee and provided **Miranda**[2] warnings. When Appellee invoked his right to remain silent, Detective O'Neill ended the interview and asked him no further questions.

Police then received additional information implicating Appellee in the robbery, including Miller's identification of Appellee as his assailant in a photo array. On March 13, 2014, Detective O'Neill called Appellee and asked him to come into the police station, and Appellee arrived with his father, James Horning (James). Detective O'Neill placed Appellee under arrest for the robbery and took him to an interrogation room while James waited in the lobby.

Approximately six minutes later, Detective O'Neill returned to James and advised him of the charges against Appellee. James asked Detective O'Neill if he could "do [him] a favor, would you please go ask [Appellee] what he wants me to tell his mother and how he wants me to tell his mother because I really don't like giving her all this bad news." (N.T. Suppression, 6/05/15, at 53 (testimony of James Horning)). Detective O'Neill agreed to relay this to Appellee, and returned a few minutes later. He told James: "[Appellee] wants you to tell his mother the truth. You don't have to tell her

_____

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

the whole truth and he wants you to contact his attorney for him." (*Id.* at 53-54).[3]

Instead of waiting for Appellee's attorney to arrive, Detective Ted Wolkiewicz interviewed Appellee approximately seven hours later. Detective Wolkiewicz **Mirandized** Appellee, who did not invoke his right to remain silent or to counsel. Detective Wolkiewicz then proceeded with the interrogation, during which Appellee gave a statement confessing to the Miller robbery.

On May 28, 2015, Appellee filed a motion to suppress evidence. The court held a hearing on June 5, 2015, and took the matter under advisement. On July 31, 2015, following review of the parties' briefs and argument, the court entered its order granting Appellee's motion to suppress. This timely appeal followed.[4]

The Commonwealth raises one question for our review: "Was [Appellee] legally incapable of waiving his right to counsel and giving a

_____

[3] At the suppression hearing, Detective O'Neill testified that he did not recall Appellee making this request regarding an attorney. (**See** N.T Suppression, at 22-23). The trial court did not credit the detective's testimony, and instead credited the testimony of James, "based upon the consistency of his testimony, his demeanor and manner of testifying and [Appellee's] prior invocation of his right to [remain silent]." (Trial Court Opinion, 10/28/15, at 2 n.1; **see also** N.T. Suppression, at 73-74). Appellee's testimony on this issue was consistent with that of James. (**See** N.T. Suppression, at 57).

[4] The Commonwealth filed a concise statement of errors complained of on appeal contemporaneously with its notice of appeal. The court entered an opinion on October 28, 2015. **See** Pa.R.A.P. 1925.

voluntary statement because he had asked his father to contact an attorney at the time of arrest, seven hours before police attempted to question him?" (Commonwealth's Brief, at 3).

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Miller*, 56 A.3d 1276, 1278-79 (Pa. Super. 2012), *appeal denied*, 70 A.3d 810 (Pa. 2013) (citation omitted). "Further, [i]t is within the suppression court's sole province as fact finder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gillespie*, 103 A.3d 115, 118 (Pa. Super. 2014) (citations and internal quotation mark omitted).

In its issue on appeal, the Commonwealth argues the trial court erred in granting the motion to suppress because Appellee waived his right to speak to a lawyer before police questioned him. (*See* Commonwealth's Brief, at 9). It contends that, from an objective standpoint, Appellee did not clearly invoke his right to counsel. (*See id.* at 12). We disagree.

> In *Miranda*, *supra*, the United States Supreme Court declared that an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation, so as to ensure that the defendant's right against compulsory self-incrimination is protected. In *Edwards v. Arizona*, 451 U.S.

477 (1981), the High Court revisited its holding in *Miranda* and adopted a prophylactic rule that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Edwards*, *supra* at 484. The High Court explained that an accused, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, **unless the accused himself initiates further communication, exchanges, or conversations with the police**." *Id.* at 484–85 (emphasis added). The purpose behind this rule is "to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights." *Michigan v. Harvey*, 494 U.S. 344, 350 (1990).

The U.S. Supreme Court has held that in order "[t]o avoid difficulties of proof and to provide guidance to officers conducting interrogations," the determination of whether the right to counsel was invoked by the accused is an "objective inquiry." *Davis v. United States*, 512 U.S. 452, 458–59 (1994). Effective assertion of the Fifth Amendment right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991) (emphasis omitted). However, if the accused makes an ambiguous or equivocal reference that would lead an officer, in light of the circumstances, to believe "only that the suspect **might** be invoking the right to counsel," police interrogation **need not cease**. *Davis*, *supra* at 459 (emphasis in original). The accused must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.*

*Commonwealth v. Martin*, 101 A.3d 706, 725–26 (Pa. 2014), *cert. denied*

*sub nom. Martin v. Pennsylvania*, 136 S.Ct. 201 (2015) (one citation

omitted; emphasis in original; citation formatting provided).

Where . . . an accused invokes his Fifth Amendment rights during a custodial interrogation but later provides an

incriminating statement, this Court reviews the voluntariness of the accused's statement by examining whether authorities refrained from further interrogation until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. *See Commonwealth v. Keaton*, 45 A.3d 1050, 1067 (Pa. 2012) (invocation of Fifth Amendment right to counsel shields arrestee from further interrogation until counsel is present, unless arrestee initiates further conversation with police). In *Commonwealth v. Hubble*, 504 A.2d 168 (Pa. 1986), this Court held that a confession given after a defendant invokes his right to counsel need not be suppressed where the defendant: "(1) initiated further communication, exchanges, or conversations with the police, and (2) knowingly and intelligently waived the right to counsel." *Id.* at 175.

*Commonwealth v. Poplawski*, 130 A.3d 697, 711-12 (Pa. 2015) (footnote, some quotation marks, and some citations omitted; citation formatting provided).

Furthermore, "[an a]ppellant's subsequent cooperation [with police] cannot be used to cast doubt on the validity of his initial assertion of the right to counsel." *Commonwealth v. Zook*, 553 A.2d 920, 923 (Pa. 1989), *cert. denied*, 493 U.S. 873 (1989) (citation omitted) (holding appellant clearly invoked his rights under *Miranda* to secure counsel where, during police interview, he requested to use phone to call his mother to see if she could get him an attorney).

Here, the trial court found that upon arriving in the interrogation room, Appellee unequivocally asked Detective O'Neill to tell his father to call his attorney, whom he had already secured. (*See* Trial Ct. Op., at 4). This "statement [could] reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by

the police." *Martin*, *supra* at 725; *see also Zook*, *supra* at 923; (N.T. Suppression, at 53-55, 57-58, 62, 66). Detective O'Neill testified that he did not recall Appellee's request for an attorney. (*See* N.T. Suppression, at 22-23). The trial court credited the testimony of Appellee and his father. (*See id.* at 74). We are bound by these credibility determinations.[5] *See Gillespie*, *supra* at 118. The trial court found that "[Appellee's] phrasing was unambiguous and clearly indicated that he was invoking his right to counsel." (Trial Ct. Op., at 5).

There is no indication that "[Appellee] himself initiate[d] further communication, exchanges, or conversations with the police," thereby subjecting himself to further interrogation by the authorities. *Martin*, *supra* at 725; *see also Poplawski*, *supra* at 711-12. Instead, the record shows that Detective O'Neill did not attempt to ascertain any information regarding Appellee's representation, and that he allowed another detective to interrogate Appellee without his attorney present. (*See* N.T. Suppression, at 23, 25). Thus, upon review, we conclude that the trial court properly granted Appellee's motion to suppress evidence. *See Miller*, *supra* at 1278-79. Accordingly, we affirm the order of the trial court.

Order affirmed.

_____

[5] Besides crediting the consistent testimony of Appellee and his father that Appellee requested an attorney, the trial court noted that this finding was not contradicted by Detective O'Neill because he had no memory of whether the statement was made. (*See* Trial Ct. Op., at 2 n.1).

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/15/2016