J-A17028-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| AUBREY DEVON SIMPSON, | |
| Appellee | No. 1799 EDA 2016 |

Appeal from the Order May 12, 2016
in the Court of Common Pleas of Montgomery County
Criminal Division at No.: CP-46-0007947-2014

BEFORE: GANTMAN, P.J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.: **FILED JANUARY 30, 2018**

The Commonwealth appeals from the trial court's order granting the motion to suppress of Appellee, Aubrey Devon Simpson. We reverse and remand.

The trial court aptly set forth the relevant facts and procedural history for our review in its August 22, 2016 opinion.

> The facts of this case are largely undisputed. Officer David Chiofolo testified that at 2:53 p.m., on June 23, 2014, he received a call to respond to a private security alarm that was activated at 7720B Lucretia Mott Way in Elkins Park, PA. When he arrived at the premises, which is a building consisting of four apartments, each with their own external entrance, no audible alarm was sounding.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The officer knocked on the front door, and was greeted by a seven[-]year[-]old[-]girl. The officer described her as "hysterically crying." He testified that "[s]he was in a state of panic. She was crying. She was hysterical. She was hard to understand. She was frightened."

The officer questioned the child while she stood in the threshold. She stated that there was no one else in the apartment with her; that she had no idea how the alarm was activated; that her mother's boyfriend had left her home alone approximately twenty minutes earlier, and she did not know where he had gone. The conversation lasted no longer than two minutes. The officer testified that he didn't hear any noises coming from the apartment or see any activity inside.

Following this conversation, Officer [Jarreau] Francis arrived on the scene. Officer Chiofolo then proceeded to search every room in the apartment.[1] The officer testified that his reasoning for the search was to make sure that there was no one in the apartment that needed medical attention, and to make sure that the child was not alone.

Officer [] Francis testified similarly. He did not converse with the child prior to the search. When asked whether there was a threat of physical harm to anyone inside of the apartment when they decided to conduct the search, Officer Chiofolo replied that it was "unknown."

On April 27, 2016, [Appellee] moved for the suppression of physical evidence recovered from the search of her home. Following a hearing on May 12, 2016, [Appellee's] motion was granted. The Commonwealth filed a notice of appeal on June 13, 2016.[a] On June 14, 2016, th[e trial c]ourt entered an order for a concise statement of errors complained of on appeal to be filed within twenty-one days. [*See*] Pa.R.A.P. 1925[(b)]. The Commonwealth's statement was filed on July 5, 2016. [*See id.*

_____

[1] While performing his visual sweep, Officer Chiofolo observed a Glock nine-millimeter handgun with a magazine, without a gunlock, in plain view. (*See* N.T. Hearing, 5/12/16, at 13-14, 18-19, 36). The firearm was fully loaded, with a round in the chamber. (*See id.* at 37-38). Ultimately, Appellee was charged with endangering the welfare of a child.

- 2 -

The trial court filed an opinion on August 22, 2016. **See** Pa.R.A.P. 1925(a).]

[a] The Commonwealth's notice of appeal included a certification that the order which is under appeal will terminate or substantially handicap the prosecution pursuant to Pa.R.A.P. 311(d).

(Trial Court Opinion, 8/22/16, at 1-2) (some footnotes omitted).

The Commonwealth raises one question for our review:

Whether the suppression court erred by concluding that the search of an apartment for any adult supervisor (an investigatory sweep) was unreasonable under the Fourth Amendment of the U.S. Constitution where officers responding to a security alarm found the exigencies of an unattended distraught young child, who was crying hysterically and unable to tell police the whereabouts of her adult supervision?

(Commonwealth's Brief, at 5).

Our standard of review of this matter is well-settled.

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

**Commonwealth v. Miller**, 56 A.3d 1276, 1278 (Pa. Super. 2012), *appeal denied*, 70 A.3d 810 (Pa. 2013) (citation omitted).

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution provide:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,

shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Constitution, Amend. IV.

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

PA Constitution Art. I, § 8.

The primary objective of the Fourth Amendment to the U.S. Constitution and Article I, Section 8 of the Pennsylvania Constitution is the protection of privacy. As a general rule, for a search to be reasonable under the Fourth Amendment or Article I, Section 8, police must obtain a warrant, supported by probable cause and issued by an independent judicial officer, prior to conducting the search. This general rule is subject to only a few delineated exceptions[.]

*Commonwealth v. Gary*, 91 A.3d 102, 106 (Pa. 2014) (citations omitted).

In the recent case of *Commonwealth v. Livingstone*, ___ A.3d ___, 2017 WL 5662399 (Pa. filed Nov. 27, 2017), the Pennsylvania Supreme Court considered the community caretaking exception to the warrant requirement. The Court observed:

The United States Supreme Court first recognized a community caretaking exception to the warrant requirement in *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). Therein, the Court considered whether police officers violated a vehicle owner's Fourth Amendment rights when, without obtaining a warrant, they searched the trunk of a parked vehicle because they reasonably believed that the trunk contained a loaded service revolver that could endanger the public if left unsecured. The vehicle owner had been arrested one day earlier

for drunk driving and identified himself as a police officer. In determining that the search of the trunk was reasonable, the Court observed that police officers "frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id.* at 441, 93 S.Ct. 2523. The high Court further opined that, "[t]he fact that the protection of the public might, in the abstract, have been accomplished by 'less intrusive' means does not, by itself, render the search unreasonable." *Id.* at 447, 93 S.Ct. 2523.

The community caretaking doctrine has been characterized as encompassing three specific exceptions: the emergency aid exception; the automobile impoundment/inventory exception; and the public servant exception, also sometimes referred to as the public safety exception. *See State v. Acrey*, 148 Wash.2d 738, 64 P.3d 594, 600 (2003) (*en banc*) (community caretaking function exception to the warrant requirement encompasses not only search and seizure of automobiles, but also situations involving either emergency aid or routine checks on health and safety).

Each of the exceptions contemplates that the police officer's actions be motivated by a desire to render aid or assistance, rather than the investigation of criminal activity.

\* \* \*

This Court [] recognizes that the role of police is not limited to the detection, investigation, and prevention of criminal activity. Rather, police officers engage in a myriad of activities that ensure the safety and welfare of our Commonwealth's citizens. Indeed, we want to encourage such laudable activity. However, even community caretaking activity must be performed in accordance with Fourth Amendment protections. Ultimately, we agree that the public servant exception may be employed consistent with these protections.

\* \* \*

Specifically, we first hold that, in order for the public servant exception of the community caretaking doctrine to apply, police

officers must be able to point to specific, objective, and articulable facts that would reasonably suggest to an experienced officer that a citizen is in need of assistance. . . . . Second, we hold that, in order for the public servant exception of the community caretaking doctrine to apply, the police caretaking action must be independent from the detection, investigation, and acquisition of criminal evidence. As noted above, this is a common requirement to warrantless searches under all three exceptions of the community caretaking doctrine, including the emergency aid exception and the automobile impoundment/inventory exceptions. . . .

*Livingstone*, *supra* at *12-14, 19-20 (most citations omitted).

In this case, police responded to the subject apartment because of a triggered security alarm. Upon arriving, they encountered a hysterical, panicked, unattended seven-year-old girl, who could not explain the activated alarm. Officer Chiofolo explained the officers' decision to enter the apartment upon being confronted with this scenario:

> The fear that [the child] was showing, the hystericalness (sic) that she was in, the crying. I wanted to make sure that her parents were not upstairs in the apartment and that there was no domestic involved, that nobody was hurt. I just wanted to make sure that she wasn't by herself[,] that she was telling me the truth at that moment.

> \* \* \*

> I didn't know what was inside the apartment. It is not normal for a[] seven year old to be left by themselves. And she was so hysterical that I—in my mind, I believe maybe something transpired in the apartment.

> \* \* \*

> I wanted to make sure that everybody was safe.

(Hearing, 5/12/16, at 11-12).

Similarly, Officer Francis explained:

[Y]ou respond to an alarm and you have a young child crying at the front door. . . . [O]bviously there's an unknown there. We have an alarm. We have a child. . . . We are talking about a young child by herself in an apartment. . . . So we are worried about maybe there was someone else in the apartment that was in danger or distress. So Officer Chiofolo checked not only to see if there's anyone else that may need police assistance or medical assistance; but also for her safety and for our safety as well[.] . . .

(*Id.* at 32-35).

Based on the foregoing testimony, we conclude that the trial court erred in granting Appellee's motion to suppress where the community caretaking exception to the warrant requirement applied to the officers' actions in searching Appellee's apartment. *See Miller*, *supra* at 1278. The record reflects that the "police officers [were] able to point to specific, objective, and articulable facts that would reasonably suggest to an experienced officer that a citizen is in need of assistance" where a hysterical, apparently unaccompanied seven-year-old child answered the door of an apartment where a security alarm had been activated. *Livingstone*, *supra* at *19 (citation omitted). Additionally, "the police caretaking action [was] independent from the detection, investigation, and acquisition of criminal evidence." *Id.* at *20. As both officers testified, they entered the apartment,

not to search for criminal evidence, but to ensure everyone was safe and that no one needed assistance.[2]

Accordingly, for the foregoing reasons, we are constrained to reverse the trial court's order granting Appellee's motion to suppress, and remand.

Order reversed. Case remanded. Jurisdiction relinquished.

_____

[2] We also observe that the warrantless search was supported by the exigent circumstances exception.

> The exigent circumstances exception to the warrant requirement recognizes that some situations present a compelling need for instant arrest, and that delay to seek a warrant will endanger life, limb[,] or overriding law enforcement interests. In these cases, our strong preference for use of a warrant must give way to an urgent need for immediate action.

*Commonwealth v. Caple*, 121 A.3d 511, 518 (Pa. Super. 2015) (citation omitted).

> The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency. . . . [I]t would be silly to suggest that the police would commit a tort by entering . . . to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur. . . .

*Brigham City, Utah v. Stuart*, 547 U.S. 398, 403-04 (2006) (citations and quotation marks omitted).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/30/18