J-A18033-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES T. BYRD, A/K/A AL-TARIQ | : | No. 1818 WDA 2016 |
| SHARIF ALI BYRD | : | |
| | : | |

Appeal from the Order October 31, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0003369-2016

BEFORE: BOWES, J., LAZARUS, J., and OTT, J.

MEMORANDUM BY OTT, J.:                                      FILED MARCH 26, 2018

The Commonwealth appeals[1] from the order entered October 31, 2016, in the Court of Common Pleas of Allegheny County, granting James T. Byrd, a/k/a Al-Tariq Sharif Ali Byrd's motion to suppress all recordings of his jail visits. The Commonwealth claims the trial court erred in finding these jail visitation recordings were made in violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("the Wiretap Act")[2] and that the two-

_____

[1] The Commonwealth has certified in its notice of appeal that the suppression order will terminate or substantially handicap its prosecution of the case. See Pa.R.A.P. 311(d).

[2] 18 Pa.C.S. § 5701, et seq.

party consent exception did not apply.[3]  After a thorough review of the submissions by the parties, the certified record, and relevant law, we reverse and remand for further proceedings.

The trial court set forth the factual history as follows.

[Byrd was initially arrested charged with certain offenses in the unrelated matter at Docket No. 1817 WDA 2016 for an incident that occurred on February 23, 2015.  The present appeal relates to events that took place after this incident.  Byrd was subsequently] released on bail [for those unrelated charges] but in June, 2015, was detained in the Allegheny County Jail by the Ohio Parole Authority.  Between June, 2015 and February, 2016, [Byrd] received multiple visits from his fiancée, Dana Heaps.  The conversations that took place during those visits were recorded.  While reviewing the recordings, it was determined that [Byrd] had discussed a recording he made of a sexual encounter with Heaps while she was unconscious.  Apparently, [Byrd] did not like that Heaps took the medication Seroquel, so he took the medication away from her and gave it to her as he felt was appropriate.  On one occasion, he gave her a greater dose than was prescribed, causing her to pass out.  While she was unconscious, [Byrd] engaged in oral, anal, and vaginal sex with her and recorded the encounter on his cell phone.  During one [of] Heaps' visits to [Byrd] at the Allegheny County Jail, [Byrd] discussed the medication and the recording of the sexual encounter with her.  Upon review of the recorded jail visit conversation, Heaps was interviewed by police and the charges were filed.

Trial Court Opinion, 1/12/2017, at 7.

_____

[3]  The Commonwealth filed an appeal in an unrelated matter with respect to Byrd at Docket No. 1817 WDA 2016.  In that appeal, the Commonwealth raised the same issue regarding the Wiretap Act as well as a search and seizure challenge.  The trial court addressed both cases in its January 12, 2017, Pa.R.A.P. 1925(a) opinion.

Byrd was charged with rape (unconscious victim), two counts of involuntary deviate sexual intercourse (unconscious victim), two counts of aggravated indecent assault (unconscious victim), two counts of terroristic threats, stalking, indecent assault (unconscious victim), invasion of privacy, and persons not to possess firearms.[4]  On October 11, 2016, Byrd filed a motion to suppress, arguing those jail visitations recordings with Heaps were illegally obtained and therefore, violated his constitutional rights and the Wiretap Act.  A hearing was held on October 31, 2016.[5]  That same day, the court entered an order granting Byrd's motion with respect to all recordings of his jail visits.  The Commonwealth filed a motion to reconsider, which was denied November 29, 2016.  This appeal followed.[6]

In its sole issue, the Commonwealth contends the trial court erred in rejecting its argument that Byrd's jail visit recordings "were permitted under the two-party consent exception to the Wiretap Act, finding that the Commonwealth failed to prove that [Byrd] heard the recording warning which

_____

[4]   18 Pa.C.S. §§ 3121(a)(3), 3123(a)(3), 3125(a)(4), 2706(a)(1) 2709.1(a)(1), 3126(a)(4), 7507.1(a)(1), and 6105(a)(1), respectively.

[5]  At the hearing, the court addressed the jail visitations recordings as they relate to this matter and the matter at Docket No. 1817 WDA 2016.

[6]  On December 7, 2016, the trial court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  The Commonwealth filed a concise statement on December 14, 2016  The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on January 12, 2017.

- 3 -

was played each time an inmate used the phone system to talk to a visitor."

Commonwealth's Brief at 16 (footnote omitted).

Our standard of review of a trial court's order granting a defendant/appellee's motion to suppress evidence is well established:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts. Commonwealth v. Miller, 2012 PA Super 251, 56 A.3d 1276, 1278-79 (Pa. Super. 2012) (citations omitted). "Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain de novo review over the suppression court's legal conclusions." Commonwealth v. Brown, 606 Pa. 198, 996 A.2d 473, 476 (2010) (citation omitted).

Commonwealth v. Korn, 139 A.3d 249, 252-253 (Pa. Super. 2016), appeal denied, 159 A.3d 933 (Pa. 2016). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." Commonwealth v. Elmobdy, 823 A.2d 180, 183 (Pa. Super. 2003) (citations omitted), appeal denied, 847 A.2d 58 (Pa. 2004). Nevertheless, the suppression court's conclusions of law are not binding on an appellate court, and are subject to plenary review. Commonwealth v. Johnson, 969 A.2d 565, 567 (Pa. Super. 2009) (citations omitted).

Generally, the Wiretap Act "prohibits the interception, disclosure or use of any wire, electronic or oral communication." Commonwealth v. Deck, 954 A.2d 603, 607 (Pa. Super. 2008), citing 18 Pa.C.S. § 5703, appeal denied, 964 A.2d 1 (Pa. 2009).[7] 18 Pa.C.S. § 5704 identifies "exceptions to Section 5703's prohibitions and allows for the interception of a wire, electronic or oral communication in designated circumstances." Deck, 954 A.2d at 607.[8] Pertinent to this case, Subsection 5404(4) states: "It shall not be unlawful and no prior court approval shall be required under this chapter for . . . [a] person, to intercept a wire, electronic or oral communication, where all parties to the communication have given prior consent to such interception." 18 Pa.C.S. § 5704(4).

Turning to the present matter, the Commonwealth states:

> Inmates and visitors at the Allegheny County Jail are notified that their conversations may be monitored or recorded immediately prior to each visit conversation. By engaging in a

---

[7] An "oral communication" is defined as follows: "Any oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation. The term does not include any electronic communication." 18 Pa.C.S. § 5702.

[8] The parties originally disputed whether the recordings fell within the county correctional facility telephone call exception to the Wiretap Act. See 18 Pa.C.S. § 5704(14); Trial Court Opinion, 1/12/2017, at 11. However, at the suppression hearing, the Commonwealth conceded that the telephone jail visit system was not a "telephone," and therefore, Subsection 5704(14) did not apply. See N.T., 10/31/2016, at 38; see also Commonwealth v. Fant, 146 A.3d 1254, 1265 (Pa. 2016) (holding inmate visit conversations using a telephone device "are not 'telephone calls,' and they are not subject to the county correctional facility 'telephone' exception under the Wiretap Act.")

conversation after receiving notice that the conversation may be monitored or recorded, the participants consent to the interception. Each of the conversations at issue in the instant case carried the warning that the conversation could be monitored or recorded. As such, visit recordings comply with the Wiretap Act, and any incriminating statements obtained from these recordings are admissible as evidence at trial.

Commonwealth's Brief at 19. The Commonwealth points to several conversations as instances in which Byrd and his visitors "actually intimated that they knew they were being recorded:"[9] (1) Byrd telling his fiancée, Dana Heaps, he could not communicate the way he wanted to because of the prison setting;[10] (2) Byrd talking at normal volume and then moving to whispered tones in certain conversations;[11] (3) Byrd telling Heaps, "I swear to God, and – and – I'm gonna say it on the phone, I don't give a fuck;"[12] and (4) Heaps having to repeat herself during one visit because she spoke before the recorded message played regarding the recording and monitoring of prison phone calls.[13] Id. at 19–21. Relying on Commonwealth v.

_____

[9] Commonwealth's Brief at 18.

[10] N.T., 10/31/2016, at 23.

[11] Id. at 24.

[12] Id. at 24.

[13] Id. at 24-25.

Baumhammers, 960 A.2d 59 (Pa. 2008), cert. denied, 558 U.S. 821 (2009),[14] the Commonwealth states:

> These conversations indicate actual acknowledgment that [Byrd] and Ms. Heaps knew they were being recorded during the visits[.]
>
> ...
>
> Like the defendant in Baumhammers, supra, [Byrd] and his visitor were notified, prior to beginning their conversations, that each conversation was subject to recording. Pursuant to the Court's holding in Baumhammers with regard to jail calls, the audio warning heard by [Byrd] and Ms. Heaps prior to the [Allegheny County Jail] visits provided sufficient notice to make all parties actually aware that their conversation was subject to recording. Moreover, Ms. Heaps testified that she knew she was being recorded and [Byrd]'s behavior and statements demonstrated that he believed that they were being recorded as well.

Commonwealth's Brief at 21-22. The Commonwealth concludes "the intercepts were lawful" under the mutual consent exception to the Wiretap Act. Id. at 24.

In suppressing the recordings, the court found the following:

_____

[14] Baumhammers, supra, held that a recorded jail telephone conversation between the defendant and his parents was permissible under Subsection 5704(14), even where there was no written notification that the conversation would be recorded, because:

> These individuals were actually aware that their telephone conversation was being or could be intercepted and recorded by prison authorities. Written notice to Appellant, assuming he never received any, would not have afforded him any greater protection of his right to privacy or that of his parents than the actual notice they possessed at the time of the conversation.

Baumhammers, 960 A.2d at 79.

The evidence presented at the suppression hearing established that inmate visits at the Allegheny County Jail are conducted over a closed-circuit system using telephone receivers. A visitor arriving at the Allegheny County Jail is taken to a visitor room with windowed cubicles, chairs and a telephone receiver. The inmate is escorted to a room on the other side of the visitor window with a telephone receiver below the window. There are no cubicles or walls on the inmate side. The inmate picks up the receiver, enters his or her jail telephone ID number and then the visitor picks up his or her receiver. Before the parties are connected, a recording stating that the visit "may be monitored or recorded" is played. There is nothing in the inmate handbook which indicates that the visits are recorded and there was no testimony regarding whether [Byrd] heard the recording before each visit. Ms. Heaps testified that she heard the recording indicating that the conversation "may be monitored or recorded" at each visit, but received no written documentation indicating that the conversations would be monitored or recorded.

...

In support of its arguments, the Commonwealth presented the testimony of Ms. Heaps, who testified that she heard a recorded statement stating that the conversation "may be monitored or recorded" prior to the connection of each visit call. Even though Ms. Heaps was never informed of the policy in writing or gave her consent in writing, the Commonwealth presumes that by beginning to speak after the recorded statement, she signified her consent. This Court accepts the Commonwealth's presumption for purposes of this analysis.

Nevertheless, the Commonwealth has failed to present any evidence indicating that [Byrd] heard the recording. It is not outside the realm of possibility that [Byrd] did not have the receiver to his ear when the recording played, and therefore may not have heard it. The Commonwealth conceded that [Byrd] was not provided with a written statement or agreement regarding consent to be recorded, and similarly conceded that there was no such provision in the inmate handbook.

At the conclusion of the suppression hearing, this Court made the following findings:

THE COURT:  But there is no direct evidence of what Mr. Byrd may have known.

[THE COMMONWEALTH]:  Well, Mr. [Samuel] Pastor testified that both parties hear this on every visitation. And he's got to have the phone up to his ear when he's punching in – he picks up the phone and he punches in his ID number and it says the call is being processed.

THE COURT:  Well, but he doesn't have to have the phone to his ear.

…

THE COURT:  Actually the inmates in the Allegheny County Jail are told, as I heard on the recording that you played, may be subject to recording.  May be monitored or recorded.

[THE COMMONWEALTH]:  I said it's almost identical.  What the federal –

THE COURT:  There's a big difference between "is" and "may be".

…

THE COURT:  The court finds that you have not proven the consent of Mr. Byrd in this case.  Relying on the Fant decision, the jail visit conversations will be suppressed.

(S.H.T., pp. 33, 36, 38).

By failing to establish that [Byrd] was aware of the recording and consented to it, the Commonwealth has not satisfied the requirements on two-party consent exception to the Wiretap Act.

Trial Court Opinion, 1/12/2017, at 8, 11-12.

We are constrained to disagree for several reasons.  First, we conclude the factual findings made by the trial court are belied by the record.  We reiterate that, as the trial court noted:  (1) before an inmate and visitor can

converse with one another, a recording stating that the visit "may be monitored or recorded" is played;[15] and (2) Heaps acknowledged at the suppression hearing that during every one of her visits with Byrd at the jail, she heard a prerecorded messaged that those visits would be recorded or monitored, and still decided to speak with him. N.T., 10/31/2016, at 22, 27. Additionally, one can readily infer that Byrd was aware the conversations were being recorded as evidenced by his statements and behavior. For example, he specifically told Heaps, "I'm gonna say it on the phone. I don't give a fuck." Id. at 24. The mutual consent exception permits interception of conversations in instances where the defendant "knew, or should have known, that the conversation was recorded." Commonwealth v. Diego, 119 A.3d 370, 377 (Pa. Super. 2015), appeal denied, 129 A.3d 1240 (Pa. 2015).[16] Based on the environment in which Byrd conversed with Heaps, an open visitation area in the jail, he should have known that their conversations could be recorded.

Second, we find the trial court's hyper-technical analysis requires that in these instances, the Commonwealth must always establish on the record

_____

[15] Trial Court Opinion, 1/12/2017, at 8.

[16] In Diego, supra, the defendant engaged in a text message conversation with the informant, which the Commonwealth sought to admit into evidence. In concluding there was no violation of the Wiretap Act, a panel of this Court stated: "It is the sender's knowledge that the communication will automatically be recorded, surmised from the very nature of the selected means of transmission, that is dispositive of the sender's lack of an expectation of privacy or, at least, the lack of any reasonable expectation of privacy." Diego, 119 A.3d at 377.

that the inmate had the telephone to his ear, listened to the message that announced the conversation may be recorded, and then consented to the message. This type of requirement is unreasonable because under such scrutiny and logic, an inmate could easily avoid the consent element by simply holding the phone away from his ear for a period of time prior to speaking with a visitor, in order to evade hearing that message. As such, the trial court's decision is misplaced with respect to the both its findings of fact and conclusions of law. See Korn, supra. Accordingly, we conclude no Wiretap Act violation occurred as the two-party consent exception applies and, therefore, the trial court erred when it granted suppression on that basis. Accordingly, we remand this matter to the court for further proceedings.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/26/2018