J-S51024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SYLVESTER ANDERSON | : | No. 662 MDA 2020 |

Appeal from the Suppression Order Entered April 21, 2020
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0004013-2019

BEFORE:  MURRAY, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:　　　　　　**FILED MARCH 30, 2021**

The Commonwealth appeals from the order granting Sylvester Anderson's suppression motion. It maintains that the trial court erred in granting the motion because the interaction between Anderson and police was a mere encounter and Anderson consented to the search. We reverse the order granting the motion and remand for further proceedings.

Following an encounter in a restaurant parking lot, police arrested Anderson and charged him with drug-related offenses. He moved to suppress claiming that the encounter "transformed into an 'investigative detention' once the police officer and his fellow law enforcement officers detained him, ordered him to drop his food, and coerced a bodily search of his person." Defendant's Motion to Suppress Evidence, filed 11/12/19, at ¶ 30. Anderson argued that officers lacked reasonable suspicion to conduct the investigative detention and he did not consent to the search. *Id.* at ¶¶ 32, 33, 38.

At a suppression hearing, the prosecution first presented the testimony of Officer Chad McGowan, who said he was on duty on May 29, 2019, at approximately 9:30 pm when he saw Anderson in the restaurant parking lot. N.T., Suppression Hearing, 1/23/20, ("N.T.") at 5, 6. Officer McGowan was driving an unmarked police vehicle accompanied by four members of law enforcement, including Sheriff's Deputy Maurice Edwards. *Id.* at 6, 27. Officer McGowan testified that during his time as an officer he had been involved in the investigation of a homicide and of firearms offenses in that parking lot, and had personally made drug arrests there. *Id.* at 7. Based on his experience, he considered the parking lot to be a "high-crime/high-drug area." *Id.*

Officer McGowan testified that he first noticed Anderson because Anderson was "on his hands and knees, looked to be crawling on the ground, next to a red Dodge pickup truck [on the driver's side of the vehicle]." *Id.* at 7, 8, 30. He thought this behavior was "unusual." *Id.* at 8. Officer McGowan said it was unclear whether the truck belonged to Anderson and he initially approached Anderson to "mak[e] sure he was okay." *Id.* at 31, 45. Officer McGowan stated he drove into the parking lot and toward Anderson, and Anderson, who was "sweating profusely," "got up, he turned around and looked at my car." *Id.* at 9. The officer testified that while still in his vehicle, he "asked [Anderson] if he was okay, and [Anderson] said he had dropped something" and then walked into the restaurant. *Id.* at 9, 31. Officer McGowan said the encounter with Anderson was "not very long," estimating that it was approximately one to two minutes. *Id.* at 10. Officer McGowan said he did not

ask Anderson for his identification before Anderson entered Harrisburg Fried Chicken, and did not conduct a pat-down search. *Id.* at 9, 10.

Officer McGowan stated that after Anderson entered the restaurant, the officer noticed that the truck was "cockeyed . . . . consuming two different spots." *Id.* at 10, 11. He also noticed that the driver's side window was down. *Id.* at 11. Based on these observations, Officer McGowan wondered "if the individual was possibly, you know, intoxicated or impaired on alcohol or a controlled substance." *Id.*

Officer McGowan stated that Anderson left the restaurant a few minutes later and looked toward the officers, who were outside their police vehicle, and then turned and started walking in the opposite direction from the officers. *Id.* at 12, 90. Officer McGowan testified that he got out of his vehicle, walked towards Anderson, asked if he could speak with him, and "[Anderson] obliged. . . ." *Id.* at 12, 39. Deputy Edwards was with Officer McGowan as he spoke with Anderson. *Id.* at 13. Both Deputy Edwards and Officer McGowan were wearing their Street Crimes Uniforms, which included "tactical attire, sewn-on badge in the front, marked by police insignia front and back, [and] . . . sleeves . . . marked with Police and Street Crimes Unit." *Id.* at 6. They also were armed. *Id.* at 87.

Officer McGowan asked Anderson for his ID and he handed it over. *Id.* Officer McGowan also asked Anderson if he was on probation or parole and Anderson replied that he was on parole. *Id.* Additionally, Officer McGowan asked Anderson if he had anything illegal on his person and he replied that he

did not. *Id.* at 14. While speaking with Anderson, Officer McGowan did not notice any odor of alcohol coming from Anderson. *Id.* at 51. He also described his interaction with Anderson as "civil." *Id.* at 16. Officer McGowan testified that he did not obstruct Anderson's ability to leave or tell Anderson that he was not free to leave. *Id.* at 14-15.

Officer McGowan said he then asked Anderson if he could search his person. *Id.* at 15. Anderson said that he could and raised his arms at his sides in a "T" shape at a 90-degree angle to his body, "as if allowing [Officer McGowan] to conduct [the] search a little easier." *Id.* at 15-16. Officer McGowan testified that as he performed the search, his hand "swept over [Anderson's] groin region," and "felt a hard and distinct bulge, which I -- it was immediately apparent to me [that Anderson] had a substantial amount of crack cocaine down the front of his pants." *Id.* at 18. Officer McGowan said that when he tried to detain Anderson, Anderson broke free and began running, but the officers tackled him. *Id.* at 8, 18. Officer McGowan testified that he remarked to another officer that he thought he had felt an ounce of crack cocaine in Anderson's pants. *Id.* at 18. The officers recovered from Anderson's pants 28.3 grams of crack cocaine, which is approximately one ounce. *Id.* at 19. Officer McGowan said that he at no time brandished a weapon or told Anderson he could not leave. *Id.* at 14.

The Commonwealth also presented the testimony of Deputy Edwards, who testified that their initial reason for making contact with Anderson was that they "were just basically concerned for his health at that point." *Id.* at

- 4 -

78. In contrast to Officer McGowan, Deputy Edwards said that during the second encounter, he detected an odor of alcohol emanating from Anderson and noticed that Anderson's eyes were glassy and red. *Id.* at 94. Deputy Edwards testified that during the second encounter, Officer McGowan asked Anderson if he had anything illegal on him and that he replied no, and when Officer McGowan asked if he could search him, Anderson said that he could. *Id.* at 73.

Anderson testified that on the night of the incident, he was searching for his phone on the ground and when he got up, Officer McGowan was nearby on foot and, addressing him as "my boy," asked what he was "doing on the ground." *Id.* at 98, 99. Anderson testified that he replied that he was picking his phone up off the ground. *Id.* at 99. Anderson said that Officer McGowan then asked for his ID and he handed it over, and after reviewing it, Officer McGowan told him, "I need to pat you down for my own protection." *Id.* Anderson said that after the officer performed a pat-down search, he let Anderson leave, and Anderson walked into the restaurant. *Id.* at 99, 100.

According to Anderson, when he left the restaurant, Officer McGowan called him by name, said that he needed to speak with him, and told him to stop. *Id.* at 101, 103. He testified that Officer McGowan began asking him questions and then searched his pockets without his consent. *Id.* at 104. Anderson also testified that after Officer McGowan searched his pockets, he again patted him down saying, "I want to see if you have a weapon." *Id.* at 105. Anderson testified that Officer McGowan then began "feeling all on [his]

privates," and he stepped back because he was uncomfortable, at which point Officer McGowan "slammed" him to the ground. *Id.* at 105-106. Anderson said the crack cocaine was not in the front of his pants but rather in his anal cavity, and once Officer McGowan slammed him to the ground, Officer McGowan reached into his pants and removed the crack. *Id.* at 108, 111.

The trial court found Officer McGowan's testimony credible and concluded that Anderson voluntarily consented to the search. It nonetheless granted the suppression motion because it concluded that the search exceeded the scope of Anderson's consent. *See* Memorandum Opinion, filed 4/21/20, at 3, at 5-6. The Commonwealth filed this appeal and presents the following questions before this Court:

> I.    Whether the lower court erred in granting [Anderson's] suppression motion where the encounter between [Anderson] and the police officer was a mere encounter and not an investigatory detention?
>
> II.   Whether, in the alternative, the lower court erred in granting [Anderson's] suppression motion where police possessed reasonable suspicion for an investigatory detention?
>
> III.  Whether the lower court erred in granting [Anderson's] motion to suppress evidence where [Anderson] voluntarily consented to the search and the search did not exceed the scope of that consent?
>
> IV.   Whether [Anderson] waived his challenge to law enforcement's alleged exceeding the voluntariness of his consent by not raising it in the lower court?

Commonwealth's Br. at 4 (suggested answers omitted). Anderson did not file a brief in this Court.

When reviewing an appeal from the grant of a suppression motion, this Court "consider[s] only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted." *Commonwealth v. Korn*, 139 A.3d 249, 252 (Pa.Super. 2016) (quoting *Commonwealth v. Miller*, 56 A.3d 1276, 1278–1279 (Pa.Super. 2012)). "Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions." *Commonwealth v. Brown*, 996 A.2d 473, 476 (Pa. 2010).

The Commonwealth's questions are interrelated. It first argues that the interaction was a mere encounter, and even if it was an investigatory detention, the police had reasonable suspicion. It also maintains that Anderson waived any challenge to the scope of the search, and in any event, the search was within the scope of Anderson's consent.

For a search by consent to be valid, the consent must be voluntary and given during a lawful police interaction, and the ensuing search must be within the scope of the consent. *Commonwealth v. Valdivia*, 195 A.3d 855, 861-62 (Pa. 2018). There are three different types of interactions between police and citizens:

> The first, a "mere encounter," does not require any level of suspicion or carry any official compulsion to stop or respond. The second, an "investigative detention," permits the temporary detention of an individual if supported by

reasonable suspicion. The third is an arrest or custodial detention, which must be supported by probable cause.

***Commonwealth v. Lyles***, 97 A.3d 298, 302 (Pa. 2014) (citations omitted).

We employ an objective test to "ascertain whether a seizure has occurred to elevate the interaction beyond a mere encounter." ***Commonwealth v. Adams***, 205 A.3d 1195, 1200 (Pa. 2019). We ask "whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" ***Id.*** (quoting ***Florida v. Bostick***, 501 U.S. 429, 437 (1991)).

Both stages of the interaction between Officer McGowan and Anderson were a mere encounter. During the first stage, Officer McGowan simply asked Anderson what he was doing, and the totality of the circumstances did not communicate to Anderson that "he was not at liberty to ignore" Officer McGowan. The second stage, which began when Anderson left the restaurant, was likewise a mere encounter. Officer McGowan testified that he asked Anderson to speak with him and Anderson for his ID and whether he was on probation or parole, had anything illegal on him, and if he would consent to a search of his person. Officer McGowan said that Anderson answered all of these questions and provided his ID, and that their conversation was civil.

The suppression court credited Officer McGowan's testimony, and the request for identification, even in the context of the other questions and additional circumstances, did not transform their interaction into an investigative detention. ***See Commonwealth v. Au***, 42 A.3d 1002, 1003-04,

1007, 1009 (Pa. 2012) (holding officer's request for identification did not transform encounter with appellant into an investigative detention where the request was made to appellant who was a passenger in a vehicle parked in lot of business premises). Moreover, the totality of the circumstances did not reasonably convey to Anderson that he was obligated to talk to Officer McGowan or that he could not have gone about his business.[1] Anderson's consent was thus not the product of an illegal detention.

The Commonwealth also maintains that the trial court erred in granting Anderson's suppression motion because he "voluntarily consented to the search and the search did not exceed the scope of that consent." Commonwealth's Br. at 22. It also maintains that Anderson waived any challenge to the scope of the search by failing to raise any such challenge in the court below.

Police must obtain a warrant to conduct a search of a person or property, unless an exception to the warrant requirement applies, such as consent to search. **See Valdivia**, 195 A.3d at 861. For consent to search to be valid, the

---

[1] Even if the second stage constituted an investigative detention, under the facts here, the police had reasonable suspicion. The suppression court believed Officer McGowan's testimony, including that Anderson was crawling on the ground next to a pickup truck that was parked "cockeyed" across two spaces, was sweating profusely, and that as Anderson left the restaurant, he started walking toward the officers but when he saw they were still there, he turned and walked in the opposite direction. The totality of the circumstances reasonably led Officer McGowan to suspect that Anderson was driving under the influence.

consent must have been voluntary and the search may not exceed the scope of consent. ***Id.*** at 861-862.

Here, the trial court determined that Anderson voluntarily consented to a search of his person, but that Officer McGowan exceeded the scope of Anderson's consent. ***See*** Memorandum Op. at 3. It explained that in its view, "Officer McGowan searched [Anderson's] groin region in a public parking lot, and it was not reasonable for Officer McGowan to believe that [Anderson's] consent extended to such an intrusive search of a private area." ***Id.***

The Commonwealth's waiver argument lacks merit. Anderson argued that the search exceeded the scope of his consent during the suppression hearing. ***See*** N.T., Suppression Hearing, at 125.

However, the Commonwealth's argument that Officer McGowan did not exceed the scope of Anderson's consent is meritorious. The Commonwealth maintains that "a reasonable person in Anderson's position would have understood his consent to encompass a search of his pockets and a brief pat-down of the areas [where] 'anything illegal' could be hidden." Commonwealth's Br. at 27.

The scope of consent is measured by a rule of "'objective reasonableness.'" ***Valdivia***, 195 A.3d at 862 (quoting ***Florida v. Jimeno***, 500 U.S. 248, 251 (1991)). We do not determine the scope of consent based on the individual's subjective belief or on the searching officer's "understanding based on his or her training and experience. Rather, we ask 'what ... the

typical reasonable person would have understood by the exchange between the officer and the suspect.'" *Id.* (quoting *Jimeno*, 500 U.S. at 251).

Here, a reasonable person in Anderson's shoes would have understood from the context of the entire exchange with Officer McGowan that the search included the groin area. Officer McGowan first asked Anderson if he had anything illegal on his person, and after Anderson said he did not, only then did the officer obtain Anderson's consent to search his "person." The issue is whether a reasonable person, having been asked such a question, would have understood Officer McGowan's request as including a sweep of the groin area. We think a reasonable person would have had such an understanding. The preceding question about whether Anderson had anything illegal on his person was the obvious trigger for the request to search, such that the first question informs the permissible scope of the search.

In other words, any reasonable person who was asked such a question and who very shortly afterward was asked to consent to a search of their person would understand that the search was intended to uncover contraband and extended to any reasonable place on the "person" where a person could secrete contraband, such as the groin. Officer McGowan's "sweep" of Anderson's groin did not exceed the scope of Anderson's consent. We reverse the order granting the motion to suppress and remand for further proceedings.

Order reversed. Case remanded. Jurisdiction relinquished.

Judge Murray concurs in the result.

Judge McCaffery files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 03/30/2021